# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

|  |  |  |
|---|---|---|
| ALFRED BOURGEOIS, | : | CIVIL ACTION |
|  | : | (Capital Habeas Corpus) |
| Petitioner, | : |  |
|  | : | Case No.   2:19-cv-392 |
| V. | : |  |
|  | : | **CAPITAL CASE** |
| SUPERINTENDENT, USP–Terre Haute, | : | **EXECUTION SCHEDULED FOR** |
| UNITED STATES OF AMERICA, | : | **JANUARY 13, 2020** |
|  | : |  |
| Respondents. | : |  |
|  | : |  |

## MOTION FOR STAY OF EXECUTION

Victor J. Abreu
Katherine Thompson
Peter Williams
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West—The Curtis Center
Philadelphia, PA 19106
215–928–0520
Victor_Abreu@fd.org
Katherine_Thompson@fd.org
Pete_Williams@fd.org

Counsel for Petitioner

Dated: August 15, 2019

## **<u>PRELIMINARY STATEMENT</u>**

Petitioner Alfred Bourgeois shall be referred to as Petitioner or Mr. Bourgeois.

Pursuant to Local Criminal Rule 6–1(h), the following documents are included in the Appendix filed with this Motion: (i) a listing of prior petitions, with docket numbers, filed in any state or federal court challenging the conviction and sentence challenged in the current petition; and (ii) a copy of, or a citation to, each state or federal court opinion, memorandum, decision, order, transcript of oral statement of reasons, or judgment involving an issue presented in the petition.

All emphasis in this Motion is supplied unless otherwise indicated.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... i

A.    Mr. Bourgeois Can Demonstrate a Significant Possibility of Success on the Merits of His Claim. ................................................................................................ 4

B.    Mr. Bourgeois Will Suffer Irreparable Injury Without a Stay. ........................... 6

C.    A Stay Will Not Substantially Harm the Government; the Potential Injury to Mr. Bourgeois Outweighs Any Harm to Respondents. ....................................... 7

D.    The Public Interest Weighs Strongly in Favor of a Stay. .................................... 9

REQUEST FOR RELIEF ............................................................................................ 10

**INTRODUCTION**

Petitioner Alfred Bourgeois respectfully requests a stay of execution pending the Court's consideration of his Petition for Writ of Habeas Corpus Pursuant to 29 U.S.C. § 2241 ("Petition").

In his Petition, Mr. Bourgeois establishes that he is intellectually disabled ("ID"), based on his IQ scores of 70 and 75 (corrected under clinically–accepted standards to 67 and 68), each of which falls within the presumptive range for ID; his demonstrated adaptive deficits in academic skills and otherwise; and the undisputed onset of these deficiencies before the age of eighteen. Therefore, his execution is categorically barred by the Federal Death Penalty Act ("FDPA") and per se unconstitutional under *Atkins v. Virginia*, 536 U.S. 304 (2002), and its progeny.

Mr. Bourgeois further establishes that the only court to ever consider his *Atkins* claim denied it under non–clinical, unscientific standards. *See United States v. Bourgeois*, No. C–02–CR–216, 2011 WL 1930684 (S.D. Tex. May 19, 2011). For example, the district judge:

- set aside diagnostic standards and relied on her own armchair assessment of Mr. Bourgeois's conduct to determine that his "true" intellectual functioning did not satisfy the IQ component for intellectually disability, despite the fact that all of his IQ scores fall within the presumptive range for ID;

- found that Mr. Bourgeois's perceived adaptive *strengths* counteracted the evidence of his adaptive *deficits*, despite acknowledging that the medical community focuses strictly on deficits;

- applied unscientific stereotypes of intellectually–disabled persons—including that ID persons look and talk differently than the general population and are incapable of driving or maintaining a job—to support her conclusion that Mr. Bourgeois's adaptive functioning was inconsistent with a diagnosis of ID; and

- treated risk factors and comorbidities as alternate *explanations for* Mr. Bourgeois's deficits, as opposed to *contributors to* his intellectual disability.

1

The district court's approach was subsequently declared unconstitutional by the United States Supreme Court in *Moore v. Texas*, 137 S. Ct. 1039 (2017) ("*Moore–I*"), and *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Moore–II*"), which held that courts must apply the medical community's current standards in assessing *Atkins* claims, and which specifically criticized many of the analytical errors that plagued the initial review of Petitioner's claim.

Following *Moore–I*, Mr. Bourgeois diligently sought to file a successive habeas petition in the same court under 28 U.S.C. § 2255(h), but the Fifth Circuit Court of Appeals denied his request on procedural grounds. Habeas relief pursuant to § 2255 being unavailable to Mr. Bourgeois, he now seeks review of his meritorious claim before this Court under § 2241. *See* 28 U.S.C. § 2255(e) (federal habeas petitioner is entitled to review under § 2241 when § 2255 is "inadequate or ineffective to test the legality" of his detention or sentence).

On July 25, 2019, the Government notified Mr. Bourgeois that his execution has been scheduled for January 13, 2019. Mr. Bourgeois had no reason to anticipate the setting of his execution date, as the federal government has not carried out an execution since 2003 and has had no execution protocol in place since 2011.[1] Yet Mr. Bourgeois now stands to be among the first individuals federally executed in over fifteen years, even though his scheduled execution is per se unconstitutional, even though no court has ever reviewed his claim of ID under constitutionally–mandated current medical standards, and even though the FDPA specifically

---

[1] *See Roane, et al. v. Barr, et al.*, Case 1:05–cv–02337–TSC–DAR (D.D.C.), Parties' Joint Motion to Continue the August 2, 2011 Status Conference and Briefing Schedule Governing the Above–Captioned Case (July 28, 2011) (ECF No. 288) (Government informing the court presiding over litigation challenging the previously–existing lethal injection protocol "that the Federal Bureau of Prisons has decided to modify its lethal injection protocol"). Subsequent status reports filed by the Government with the court indicated that it was continuing to develop a new protocol, but it was not until July 25, 2019—the day Mr. Bourgeois received his warrant—that any new protocol was announced.

provides that "a sentence of death shall not be carried out upon a person who is mentally retarded." 28 U.S.C. § 3596(c).

Given the fact–intensive nature of an *Atkins* claim, Mr. Bourgeois's Petition includes requests for further pleadings by the parties and an evidentiary hearing before this Court. He also seeks a stay of execution so that the Court can fully and fairly review his compelling claim for relief.

## PROCEDURAL HISTORY

In 2004, Mr. Bourgeois was convicted of capital murder and sentenced to death in the United States District Court for the Southern District of Texas for the 2002 death of his two–year–old daughter, J.G. On August 25, 2005, the Fifth Circuit affirmed Mr. Bourgeois's conviction and sentence on direct appeal. *United States v. Bourgeois*, 423 F.3d 501 (5th Cir. 2005). The Supreme Court denied his petition for writ of certiorari on May 15, 2006. 547 U.S. 1132 (2006).

On May 14, 2007, Mr. Bourgeois filed a Motion for Relief Pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence of death, including a claim that he is intellectually disabled and his death sentence is unconstitutional pursuant to *Atkins*.

On May 19, 2011, the district court denied Petitioner's § 2255 motion and denied a Certificate of Appealability ("COA") on all claims. *Bourgeois*, 2011 WL 1930684. The Fifth Circuit denied Mr. Bourgeois's request for a COA on August 5, 2013. *United States v. Bourgeois*, 537 F. App'x. 604 (5th Cir. 2013).

On March 27, 2018, Petitioner requested authorization from a panel of the Fifth Circuit to file a successive habeas petition under 28 U.S.C. § 2255(h)(2). On August 23, 2018, the Fifth Circuit denied Mr. Bourgeois's request. *In re Bourgeois*, 902 F.3d 446 (5th Cir. 2018).

### **MR. BOURGEOIS IS ENTITLED TO A STAY OF EXECUTION.**

The standard for issuance of a stay is like that for issuance of a preliminary injunction. The moving party must show: (i) a significant possibility of success on the merits; (ii) irreparable harm will result in the absence of the stay; (iii) the balance of harms is in favor of the moving party; and (iv) the public interest supports a stay. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Mr. Bourgeois meets these requirements.

**A.     Mr. Bourgeois Can Demonstrate a Significant Possibility of Success on the Merits of His Claim.**

Mr. Bourgeois is able to demonstrate a "significant possibility of success on the merits" of his *Atkins* claim. *Hill*, 547 U.S. at 584. As discussed in detail in his Petition, there is no doubt that Mr. Bourgeois meets the three prongs of the clinical definition of intellectual disability under current clinical definitions: subaverage intellectual functioning, adaptive deficits, and onset before age eighteen. His uncorrected IQ scores of 70 and 75, like his properly corrected scores of 65 and 68, each establish subaverage intellectual functioning. Standardized testing, clinical evaluation, contemporaneous records, and numerous witnesses attest to his significant adaptive impairments in conceptual, social, and practical skills, any one of which is by itself sufficient to establish adaptive deficits. It is also clear that Petitioner's lifelong intellectual and adaptive impairments long predate his eighteenth birthday. Lastly, while no etiology is required, Mr. Bourgeois's diagnosis of intellectual disability is corroborated by the presence of a number of recognized risk factors for ID in his life history, including: child abuse, sexual abuse, neglect and impaired parenting, low socioeconomic status, history of learning difficulties, and family heredity risk.

Mr. Bourgeois's Petition also demonstrates that his claim is cognizable under § 2241. A

federal habeas petitioner is entitled to review under § 2241 when § 2255 is "inadequate or ineffective to test the legality of his detention" or sentence. 28 U.S.C. § 2255(e); *see also Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) (§ 2241 applies to challenges to a habeas petitioner's sentence, in addition to his conviction). Cognizable claims include those that rely on a new legal or factual basis not available at the time of the petitioner's trial proceedings or his § 2255 proceedings. *See, e.g.*, *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (petitioner's *Atkins* claim cognizable under § 2241 based on newly–discovered evidence establishing innocence of death penalty); *In re Davenport*, 147 F.3d 605, 607–11 (7th Cir. 1998) (legal claim was unavailable to petitioner at time of initial habeas proceedings because circuit precedent would have required the district court and appellate panel to erroneously reject petitioner's claim at the time of his § 2255 motion). Section 2241 is also the appropriate vehicle where a petitioner challenges the execution of the sentence. *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003); *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

Mr. Bourgeois's claim relies on the *Moore–I* and *Moore–II* decisions, which rendered unconstitutional Fifth Circuit precedent rejecting the application of medical standards to *Atkins* claims, as well as newly–adopted diagnostic criteria. Notably, the Fifth Circuit has authorized the filing of successive habeas petitions by petitioners who were in a nearly identical procedural posture. *See, e.g.*, *Cathey v. Davis (In re Cathey)*, 857 F.3d 221, 232 (5th Cir. 2017) (holding *Atkins* was "previously unavailable" to Mr. Cathey because the circuit's pre–*Moore–I* precedent precluded a finding of intellectual disability at the time of his initial habeas petition); *In re Johnson*, No. 19–20552, 19–70013, 2019 WL 3814384, at *5–6 (5th Cir. Aug. 14, 2019) (holding that "new diagnostic guidelines" have brought "significant changes in the diagnosis of intellectual disability" and that "it is correct to equate legal availability with changes in the

5

standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*"). Nevertheless, the Fifth Circuit denied Mr. Bourgeois's own request to file a successive habeas petition, making § 2241 the only remaining vehicle by which he may obtain review of his unconstitutional sentence. Additionally, Mr. Bourgeois challenges the execution of his fundamentally illegal death sentence. The FDPA requires such prospective relief to be available, providing as it does that "[a] sentence of death shall not be carried out upon a person who is mentally retarded." 18 U.S.C. § 3596(c); *see also Atkins*, 536 U.S. at 320 (establishing "categorical rule making [intellectually disabled] offenders ineligible for the death penalty").

**B.    Mr. Bourgeois Will Suffer Irreparable Injury Without a Stay.**

The harm to Mr. Bourgeois of being put to death without ever receiving full and fair review of the constitutionality of his execution cannot be overstated. Both the FDPA and *Atkins* categorically prohibit the execution of intellectually disabled persons, and Mr. Bourgeois has set forth a substantial claim that he is ID under current standards. Yet if no stay of execution is granted, Mr. Bourgeois will be killed on January 13, 2020, before any court has the opportunity to review that claim. Plainly, this would constitute irreparable harm. *See, e.g.*, *Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring in decision to vacate stay of execution) ("The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty"); *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) ("There can be no doubt that a defendant facing the death penalty at the hands of the state faces irreparable injury.").

The risk of harm to Mr. Bourgeois is aptly illustrated by the case of Bruce Webster. Mr. Webster, like Mr. Bourgeois, was convicted and sentenced to death under the Federal Death

Penalty Act in Texas. Also like Mr. Bourgeois, Mr. Webster was denied *Atkins* relief on habeas review based on Fifth Circuit precedent that called for the application of non–clinical standards in assessing intellectual disability. *See United States v. Webster*, 421 F.3d 308, 313 (2005). Like Mr. Bourgeois, Mr. Webster then raised his *Atkins* claim before this Court in a § 2241 petition. This Court initially dismissed Mr. Webster's petition on jurisdictional grounds, but the Seventh Circuit reversed, explaining that to hold otherwise might lead to the "intolerable result of condoning an execution that violates the Eighth Amendment." *Webster*, 784 F.3d at 1139. Had the Seventh Circuit not authorized this Court's review of Mr. Webster's § 2241 petition, Mr. Webster could very well have been among the federal inmates now facing a scheduled execution. Yet, as this Court established after reviewing Mr. Webster's petition on the merits, Mr. Webster is intellectually disabled and ineligible for death. *See Webster v. Lockett*, No. 2:12–cv–86–WTL–MJD, 2019 WL 2514833, at *1 (S.D. Ind. June 18, 2019). Mr. Bourgeois deserves the opportunity to make the same showing.

**C.    A Stay Will Not Substantially Harm the Government; the Potential Injury to Mr. Bourgeois Outweighs Any Harm to Respondents.**

The Government's interest in securing Mr. Bourgeois's execution before full and fair judicial review of his *Atkins* claim is adherence to an arbitrary schedule announced mere days ago. Mr. Bourgeois's request for a stay is not based on any delay on his part. He moved diligently in the wake of the *Moore–I* decision to seek permission from the Fifth Circuit to file a successive habeas petition. That request was denied on August 23, 2018. Petitioner diligently filed his § 2241 Petition after his application to file a successive § 2255 motion was denied. Furthermore, as noted above, Mr. Bourgeois had no reason to anticipate the setting of his execution date, as the federal government has not carried out an execution since 2003 and has had no execution protocol in place since 2011.

7

Given the circumstances, Mr. Bourgeois was undeniably diligent in bringing his § 2241 petition, and the posture of his litigation therefore stands in contrast to those cases where last–minute stay requests have been denied due to a prisoner's delay. *See, e.g.*, *Nelson*, 541 U.S. at 649 (court may deny a stay of execution based on a civil rights claim when prisoner is abusive, *citing*, *Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653 (1992)); *Hill*, 547 U.S. at 584 ("A court considering a stay must also apply a strong equitable presumption against the grant of a stay *where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay*.") (internal quotation marks and citations omitted).

In any event, under no scenario can the Government's interest in adhering to an execution schedule set more than fifteen years after the last federal execution outweigh the interest of the Petitioner and the public in ensuring that a person with an intellectual disability not be put to death. *See Moore–I*, 137 S. Ct. at 1048 (Eighth Amendment limits a state's "power to take the life of *any* intellectually disabled individual.") (emphasis in original) (quotation marks and citation omitted). As the Supreme Court in *Atkins* explained: "[t]hose mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes. Because of their disabilities in areas of reasoning, judgment, and control of their impulses, however, they do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." *Atkins*, 536 U.S at 306. Therefore, "[n]o legitimate penological purpose is served by executing a person with intellectual disability. To do so contravenes the Eighth Amendment, for to impose the harshest of punishments on an intellectually disabled person violates his or her inherent dignity as a human being." *Hall v. Florida*, 134 S. Ct. 1986, 1992 (2014).

**D.**     **The Public Interest Weighs Strongly in Favor of a Stay.**

There can be no public interest in an unconstitutional execution. "The public interest clearly favors the protection of constitutional rights." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 1992) (affirming preliminary injunction to protect plaintiffs' free exercise rights where the harm to the borough of posting items on utility poles is outweighed by the harm to plaintiffs of being unable to practice their religion). Injunctive relief, in fact, will serve the Government's and the public's interest in executing the death sentence in a manner consistent with the Constitution. *See Trop v. Dulles*, 356 U.S. 86, 100 (1958) ("The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards.").

To the extent there is a public interest in timely enforcement of a death sentence, that interest does not outweigh the public interest in knowing that the federal government will carry out an execution in conformity with the Constitution and the will of Congress. *See* 28 U.S.C. § 3596(c).

## **REQUEST FOR RELIEF**

WHEREFORE, for the foregoing reasons and those explained in his § 2241 Petition, Mr.

Bourgeois respectfully requests that the Court stay his execution pending its consideration of his

*Atkins* claim.


Respectfully submitted,

*/s/ Peter Williams*

Peter Williams
Victor J. Abreu
Katherine Thompson
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West—The Curtis Center
Philadelphia, PA 19106
215–928–0520
Victor_Abreu@fd.org
Katherine_Thompson@fd.org
Pete_Williams@fd.org

Dated: August 15, 2019

## CERTIFICATE OF SERVICE

I, Peter J. Williams, hereby certify that on this date, a copy of the within document has

been caused to be served upon the following party via first class mail at the address listed below:

Paula C. Offenhauser
Assistant United States Attorney
U.S. Attorney's Office for the
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, TX 77002


*/s/ Peter Williams*
Peter Williams
Federal Community Defender Office
   for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West—The Curtis Center
Philadelphia, PA 19106
215–928–0520
Pete_Williams@fd.org

Dated: August 15, 2019