# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ALFRED BOURGEOIS, | § | |
| Petitioner, | § | |
| v. | § | No. 2:19-cv-00392-JMS-DLP |
| | § | |
| SUPERINTENDENT, | § | |
| USP—Terre Haute, | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondents. | § | |

---

## RETURN TO ORDER TO SHOW CAUSE

---

JOSH J. MINKLER
United States Attorney

By:  s/ Paula C. Offenhauser
PAULA C. OFFENHAUSER
Special Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9102
E-mail:  Paula.Offenhauser@usdog.gov

By:  s/ Brian Reitz
BRIAN REITZ
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
E-mail:  Brian.Reitz@usdoj.gov

*Attorneys for Respondent*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. v

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 9

    A.    Facts: Bourgeois brutally murdered his 2-year daughter at the Corpus Christi Naval Air Station on June 27, 2002. ........................................................................................... 9

    B.    Procedural History. .......................................................... 17

        1.    Trial, Sentencing, and Direct Appeal, *United States v. Bourgeois,* No. 2:02-cr-216 (S.D.Tex. 2004), 423 F.3d 501 (5th Cir. 2005), *cert. denied,* 547 U.S. 1132 (2006) ............................................ 17

        2.    28 U.S.C. § 2255, Motion to Vacate, *United States v. Bourgeois,* Nos. 2:02-cr-216, 2:07-cv-223, 2011 WL 1930684 (S.D.TX, May 19, 2011) .......................... 21

        3.    *United States v. Bourgeois,* 537 F. App'x 604 (5th Cir. 2013) (per curiam), *cert. denied,* 135 S. Ct. 46 (2014) ................................................................................ 28

        4.    *In re Bourgeois,* 902 F.3d 446 (5th Cir. 2018) ............. 30

ARGUMENT ................................................................................................ 34

    A.    BECAUSE BOURGEOIS CANNOT SHOW THAT 28 U.S.C. § 2255 IS "INADEQUATE OR INEFFECTIVE" TO TEST THE LEGALITY OF HIS DETENTION, THIS COURT SHOULD DISMISS THE ATKINS CLAIM HE PRESENTED UNDER 28 U.S.C. § 2241 ........................... 34

ii

# TABLE OF CONTENTS, cont'd

**Page**

1. Section 2255 provides the exclusive means for a federal prisoner to collaterally attack his conviction or sentence ................................................. 37

2. The remedy afforded by § 2255 functions as an effective substitute for § 2241, not as an "in addition to." ............................................................... 40

3. Section 2241 does not permit Bourgeois to circumvent § 2255's limits on second or successive motions ...................................................................... 44

4. Bourgeois' *Atkins* claim does not meet the requirements of § 2255(h) for a successive motion...... 46

5. Bourgeois cannot show § 2255 is "inadequate or ineffective" and that should have access to § 2241 ..... 48

6. To proceed under § 2241 requires a structural problem with § 2255 that forecloses even one round of effective collateral rule .................................. 51

7. The Seventh Circuit's decisions do not permit Bourgeois to relitigate his *Atkins* claim under § 2241 ....................................................................... 56

8. The Seventh Circuit's *Davenport* standard does not allow Bourgeois' *Atkins* claim to proceed under § 2241 ....................................................................... 58

9. The *Webster* standard does not allow Bourgeois' *Atkins* claim to proceed under § 2241 .......................... 64

## TABLE OF CONTENTS, cont'd

**Page**

10. Bourgeois' § 2241 motion is an abuse of the writ and premised on a theory at odds with *Teague*...........66

11. Bourgeois cannot relitigate his Atkins claim under 28 U.S.C. § 2241 by making his 28 U.S.C. § 2255 remedy inadequate......................................................72

B. THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS APPLIED THE AAIDD'S AND APA'S DEFINITION OF INTELLECTUAL DISABILITY IN THE AAIDD 11TH EDITION AND DSM-IV-TR, THE DIAGNOSTIC GUIDES CURRENT AT THE TIME OF BOURGEOIS' § 2255 PROCEEDING .........................................................76

UNITED STATES' OPPOSITION TO MOTION FOR STAY OF EXECUTION.................................................................93

CONCLUSION ......................................................................96

CERTIFICATE OF SERVICE..............................................97

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)........................74

*Atkins v. Virginia*, 536 U.S. 304 (2002) ..........................................*passim*

*Beason v. Marske*, 926 F.3d 932 (7th Cir. 2019)...........................*passim*

*Bennett v. United States*, 119 F.3d 468 (7th Cir. 1997)............... 4, 33, 45

*Bobby v. Bies*, 556 U.S. 825 (2009)..........................................................78

*Bourgeois v. United States*, 547 U.S. 1132 (2006) .................................20

*Bourgeois v. United States*, --- U.S. ---, 135 S. Ct. 46 (2014) .................30

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................22

*Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) ...................... 40, 56, 59

*Brumfield v. Cain*, --- U.S. ---, 135 S. Ct. 2269 (2015)...........................72

*Cain v. Chappell*, 870 F.3d 1003 (9th Cir. 2017), *cert. denied,*
 139 S. Ct. 455 (2018) ...............................................................62

*Camacho v. English*, 872 F.3d 811 (7th Cir. 2017), *cert. denied,*
 138 S. Ct. 1028 (2018) ..............................................................51

*Chazen v. Marske*, --- F.3d ---, 2019 WL 4254295
 (7th Cir. Sept. 9, 2019) ..............................................................37

*Cooper v. United States*, 199 F.3d 898 (7th Cir. 1999) .........................41

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ............................................39

*Davis v. United States*, 417 U.S. 333 (1974)....................................38, 40

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                                                    **Page(s)**

*Elmore v. Shoop,* 1:07-CV-776, 2019 WL 3423200
    (S.D. Ohio July 30, 2019) ...................................................... 37, 47

*Ex Parte Briseno,* 135 S.W.3d 1 (Tex. Crim. App. 2004) ........................ 88

*Fulks v. Krueger,* --- F.Supp.3d ---, No. 2:15-cv-33-JRS-MJD,
    2019 WL 4600210 (S.D. Ind. Sept. 20, 2019) ........................ *passim*

*Garza v. Lappin,* 253 F.3d 918 (7th Cir. 2001) .............................. *passim*

*Gideon v. Wainwright,* 372 U.S. 335 (1963) ........................................... 71

*Gomez v. U.S. Dist. Court for N. Dist. of California,*
    503 U.S. 653 (1992) ................................................................... 9, 95

*Goodwin v. Steele,* 814 F.3d 901 (8th Cir. 2014)
    (per curiam) .................................................................................. 47

*Hall v. Florida,* 572 U.S. 701 (2014) ............................................. *passim*

*Hare v. United States,* 688 F.3d 878 (7th Cir. 2012) ............................. 46

*Hernandez v. Fed. Corr. Inst.,* No. 08-C-499, 2008 WL 2397546
    (E.D. Wis. June 10, 2008) .......................................................... 75

*Hill v. McDonough,* 547 U.S. 573 (2006) ........................................... 8, 94

*Hill v. Werlinger,* 695 F.3d 644 (7th Cir. 2012) ................................ 38, 57

*Hope v. United States,* 108 F.3d 119 (7th Cir. 1997) ............................. 46

*Horn v. Banks,* 536 U.S. 266 (2002) ...................................................... 68

*In re Payne,* 722 F. App'x 534 (6th Cir. 2018) ........................... 32, 47, 68

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                         **Page(s)**

*In re Bourgeois*, 902 F.3d 446 (5th Cir. 2018)................................. *passim*

*In re Bowles*, 935 F.3d 1210 (11th Cir. 2019) ................................... 47, 62

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998)................................ *passim*

*In re Henry*, 757 F.3d 1151 (11th Cir. 2014)......................................... 47

*In re Jones*, 830 F.3d 1295 (11th Cir. 2016)..................................... 44, 63

*In re Page*, 179 F.3d 1024 (7th Cir. 1999).............................................. 68

*Kilgore v. Sec'y, Fla. Dep't of Corr.*, 805 F.3d 1301 (11th Cir. 2015) ..... 48

*Kramer v. Olson*, 347 F.3d 214 (7th Cir. 2013)............................ 37, 58, 59

*Light v. Caraway*, 761 F.3d 809 (7th Cir. 2014) ..................................... 53

*McCarthan v. Director,* 851 F.3d 1076 (11th Cir. 2017) (en banc),
   *cert. denied,* 138 S. Ct. 502 (2017).................................................. 56

*McManus v. Neal*, 779 F.3d 634 (7th Cir. 2015)..................................... 78

*Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016).............................. 57, 58

*Montgomery v. Louisiana*, --- U.S. ---, 136 S. Ct. 718 (2016)................. 70

*Moore v. Texas*, --- U.S. ---, 137 S. Ct. 1039 (2017) ......................... *passim*

*Moore v. Texas*, --- U.S. ---, 139 S. Ct. 666 (2019) .......................... *passim*

*Morales v. Bezy*, 499 F.3d 668 (7th Cir. 2007) ...................................... 75

*Penry v. Lynaugh,* 492 U.S. 302 (1989)................................................. 70

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                                                    **Page(s)**

*Peoples v. United States*, 403 F.3d 844 (7th Cir. 2005) .......................... 42

*Poe v. LaRiva*, 834 F.3d 770 (7th Cir. 2016) .................................. *passim*

*Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) .................................. 56

*Rice v. Collins*, 546 U.S. 333 (2006) ...................................................... 73

*Roundtree v. Krueger*, 910 F.3d 312 (7th Cir. 2018) ............. 56, 57, 67, 68

*Salinger v. Loisel*, 265 U.S. 224 (1924) .................................................. 67

*Sanders v. United States*, 373 U.S. 1 (1963) ................................. *passim*

*Shepherd v. Krueger*, 911 F.3d 861 (7th Cir. 2018), *cert. denied,*
    139 S. Ct. 1582 (2019) ...................................................... 43, 48, 49

*Shoop v. Hill*, 139 S. Ct. 504 (2019) ..................................... 61, 62, 63, 77

*Smith v. Comm'r, Ala. Dep't of Corr.*, 924 F.3d 1330
    (11th Cir. 2019) ................................................................ 47, 68, 71

*Smith v. Dunn,* 2:13-CV-00557-RDP, 2017 WL 3116937
    (N.D. Ala. July 21, 2017) ............................................................. 47

*Smith v. Sharp*, 935 F.3d 1064 (10th Cir. 2019) ....................... 37, 62, 63

*Smith v. Warden, FCC Coleman – Low*, 503 F. App'x 763
    (11th Cir. 2013) ............................................................................. 52

*Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011) ....................... 42

*Susi nka v. United States*, 855 F.3d 728 (7th Cir. 2017) ....................... 47

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                              **Page(s)**

*Taylor v. Gilkey*, 314 F.3d 832 (7th Cir. 2002) .............................. *passim*

*Teague v. Lane*, 489 U.S. 288 (1989) ....................................... 7, 68, 69, 70

*Tyler v. Cain*, 533 U.S. 656 (2001) ........................................ 42, 43, 45, 71

*United States v Alfred Bourgeois*, 423 F.3d 501 (5th Cir. 2005),
    *cert. denied,* 547 U.S. 1132 (2006).............................. 10, 17, 20, 21

*United States v Alfred Bourgeois,* No. 2:02-cr-216, No. 2:07-cv-223,
    2011 WL 1930684 (S.D.Tex. May 19, 2011), *COA denied,*
    No. 11-70024, 537 F. App'x 604 (5th Cir. Aug. 5, 2013),
    *cert. denied,* 135 S. Ct. 46 (2014) ........................................... *passim*

*United States v. Bourgeois,* 537 F. App'x 604 (5th Cir. 2013)
    (per curiam), *cert. denied,* 135 S. Ct. 46 (2014) ............................ 29

*United States v. Hayman,* 342 U.S. 205 (1952) ..................................... 38

*United States v. Prevatte,* 300 F.3d 792 (7th Cir. 2002) ............. 40, 41, 53

*Van Daalwyk v. United States*, 21 F.3d 179 (7th Cir. 1994) .................. 68

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015)
    (en banc) ............................................................................ *passim*

*White v. United States*, 371 F.3d 900 (7th Cir. 2004) ................... 4, 33, 45

*Williams v. Kelley,* 858 F.3d 464 (8th Cir. 2017) ............................ 32, 47

*Wong Doo v. United States,* 265 U.S. 239 (1924) .................................. 67

*Wood v. Allen,* 558 U.S. 290 (2010) ...................................................... 73

# TABLE OF AUTHORITIES, cont'd

**Statutes and Rules**                                                      **Page(s)**

8 U.S.C. § 3592(c)(6) ................................................................................. 18

8 U.S.C. § 3592(c)(9) ................................................................................. 18

8 U.S.C. § 3592(c)(11) ............................................................................... 18

18 U.S.C. § 7 ............................................................................................... 17

18 U.S.C. § 13 ............................................................................................. 17

18 U.S.C. § 1111 ......................................................................................... 17

18 U.S.C. § 3591(a)(2) ................................................................................ 18

18 U.S.C. § 3591(a)(2)(D) .......................................................................... 20

28 U.S.C. § 1651 ......................................................................................... 40

28 U.S.C. § 2241 ............................................................................... *passim*

28 U.S.C. § 2241(b)(1) ........................................................... 4, 33, 44, 45

28 U.S.C. § 2244(a) ...................................................................................... 3

28 U.S.C. § 2244(b)(1) ................................................................... 4, 42, 94

28 U.S.C. § 2244(b)(2) ............................................................... 3, 7, 32, 94

28 U.S.C. § 2244(b)(2)(A) ................................................................... 43, 45

28 U.S.C. § 2244(b)(2)(B)(i)-(ii) ............................................................... 43

28 U.S.C. § 2244(b)(3)(A) ............................................................. 3, 30, 42

## TABLE OF AUTHORITIES, cont'd

**Statutes and Rules**                                                    **Page(s)**

28 U.S.C. § 2244(b)(3)(B)..................................................................................31

28 U.S.C. § 2244(b)(3)(C)....................................................................................3

28 U.S.C. § 2253(c) ...........................................................................................10

28 U.S.C. § 2254 ...............................................................................................39

28 U.S.C. § 2255 ...................................................................................... *passim*

28 U.S.C. § 2255(a) ......................................................................................23, 39

28 U.S.C. § 2255(b)(2)........................................................................................63

28 U.S.C. § 2255(e) .................................................................................. *passim*

28 U.S.C. § 2255(h)............................................................................... 7, 43, 45

28 U.S.C. § 2255(h)(1) .......................................................................................47

28 U.S.C. § 2255(h)(2) ...................................................... 3, 32, 44, 47, 63

Tex. Pen. Code § 22.04(a)(1)..............................................................................17

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

ALFRED BOURGEOIS,                  §
    Petitioner,                §
v.                                 §   No. 2:19-cv-00392-JMS-DLP
                               §
SUPERINTENDENT,                    §
    USP—Terre Haute,           §
UNITED STATES OF AMERICA,          §
    Respondents.               §

---

## RETURN TO ORDER TO SHOW CAUSE

---

For their return to the Order to Show Cause and in response to Petitioner Albert Bourgeois' (Bourgeois) petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, the Respondents advise the Court as follows:

## INTRODUCTION

Bourgeois is a federal inmate currently housed on death row at the United States Penitentiary at Terre-Haute (USP-Terre Haute), scheduled for execution on January 13, 2020, for the 2002 brutal and horrifying murder of his two-year-old daughter (JG) while making a delivery at a United States Naval base. Bourgeois savagely beat and tortured JG during the last six weeks of her life while having custody

over her—that is, biting her all over her body, burning her, whipping her with belts, extension cords and his hands, beating her with a baseball bat, shoes and other objects, duct-taping her mouth shut, and forcing her to drink his urine from a jug that the kept in his truck.  He murdered his daughter by forcibly slamming her head into the window of his truck until JG's face became "real, real sad," as witnessed by his then other 7-year old daughter, who testified at trial.

Based on well-established Seventh Circuit precedent applied to the facts of this case, Bourgeois' *Atkins* claim began under 28 U.S.C. § 2255 in the Southern District of Texas and ends there.  Bourgeois timely moved under 28 U.S.C. § 2255 to vacate his sentence on the ground that he is intellectually disabled and therefore ineligible for execution under *Atkins v. Virginia,* 536 U.S. 304 (2002).  The United States District Court for the Southern District of Texas decided Bourgeois' *Atkins* claim on the merits after affording him the opportunity to fully litigate that claim without imposing any limitation. United States District Court Judge Janice Graham Jack, who presided over the guilt and punishment phases of his trial and the entire 2007-2011 § 2255 proceeding, determined that Bourgeois is not intellectually disabled under the *Atkins* criterion. She

2

did so after holding a complete and extensive evidentiary hearing and denied his request for *Atkins* relief in a careful and comprehensive order and opinion filed on May 19, 2011. *United States v Alfred Bourgeois,* No. 2:02-cr-216, No. 2:07-cv-223, 2011 WL 1930684, *1 (S.D.Tex. May 19, 2011), *certificate of appealability denied,* No. 11-70024, 537 F. App'x 604 (5th Cir. Aug. 5, 2013), *cert. denied,* 135 S. Ct. 46 (2014).    The decision of the Southern District of Texas is final under 28 U.S.C. § 2244(a), (b)(1), and (b)(2).

Years later on March 28, 2018, Bourgeois requested Fifth Circuit authorization to proceed on a successive 28 U.S.C. § 2255 motion under § 2255(h)(2), pursuant to 28 U.S.C. § 2244(b)(3)(A).    Bourgeois argued that, based on the Supreme Court's decision in *Moore v. Texas (Moore I),* --- U.S. ---, 137 S. Ct. 1039 (2017), he satisfied the requirements of § 2255(h)(2) because *Atkins* created a new rule of constitutional law made by the Supreme Court retroactively applicable to cases on collateral review.    The United States' position before the Fifth Circuit in opposition to Bourgeois' request was then, and is now, that Bourgeois failed to satisfy the gatekeeping requirements of 28 U.S.C. § 2255(h)(2) and § 2244(b)(3)(C); that Bourgeois' *Atkins* claim presented in his second or

3

successive § 2255 motion and the evidence he attached in support duplicated the *Atkins* claim and evidence that he presented to the district court in his first § 2255 motion, and that the Supreme Court did not declare *Moore (I)* or its predecessor, *Hall v. Florida,* 572 U.S. 701 (2014), a new rule of constitutional law retroactively applicable to cases on collateral review.  The Fifth Circuit agreed, holding that Bourgeois' "successive § 2255 motion present[ed] only a single claim that was already presented in his original motion."  *In re Bourgeois,* 902 F.3d 446, 448 (5th Cir. 2018).  Joining the other circuits having addressed the issue, including the Seventh Circuit in *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997), and *White v. United States,* 371 F.3d 900, 901 (7th Cir. 2004), the Fifth Circuit held that the strict litigation bar in 28 U.S.C. § 2244(b)(1) applies equally to federal prisoners and barred Bourgeois from relitigiting his *Atkins* claim.  Accordingly, the Fifth Circuit denied Bourgeois' request for authorization to proceed on a successive § 2255 pursuant to § 2241(b)(1).

Bourgeois filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1), asserting this Court's jurisdiction via the "savings clause" in 28 U.S.C. § 2255(e) and claiming that he is categorically

exempt from execution under *Atkins* under *Moore (I)* and the Supreme Court's recent decision in *Texas v. Moore (Moore II),* --- U.S. ---, 139 S. Ct. 666 (2019).  The declarations, affidavits, and reports of mental health professionals, the declaration of lay witnesses, and other investigatory records that Bourgeois attaches as appendices to his § 2241 petition and as supporting his claim of intellectual disability, Dkt. 1-1, is evidence that was available to him at the time of his first § 2255 proceeding and is in fact the *same* evidence that he presented to the United States District Court for the Southern District of Texas at that evidentiary hearing in September 2010 through January 2011.

The "savings clause" under § 2255(e) does not allow Bourgeois' *Atkins* claim to proceed under § 2241 because Bourgeois cannot meet his burden of showing that § 2255 is "inadequate or ineffective."   The Seventh Circuit holds that, to pass through the savings clause and proceed under § 2241, there must be a structural problem with § 2255 that prevents an opportunity to address claims on collateral review. Bourgeois agrees, and the record establishes, that he fully adjudicated his *Atkins* claim at his first § 2255 proceeding.  The mere fact that Bourgeois' petition is barred as a successive petition under § 2255 does

not bring Bourgeois' petition under the savings clause's protection. To hold otherwise would denigrate the careful structure Congress has created to avoid repetitive filings to meaning little or nothing, as the Seventh Circuit pointedly holds in *Garza v. Lappin,* 253 F.3d 918, 921 (7th Cir. 2001).

As important, Bourgeois does not satisfy the Seventh Circuit's tests under *In re Davenport,* 147 F.3d 605 (7th Cir. 1998), and *Webster v. Daniels,* 784 F.3d 1123 (7th Cir. 2015) (en banc), to proceed under § 2241. *Davenport* precludes the use of § 2241 for claims based on a constitutional case. *Atkins* and its progeny, *Hall, Moore I,* and *Moore II,* are all grounded in the Eighth Amendment and are not statutory interpretation cases. Neither *Moore I* nor *Moore II* establish new "legal and factual bases" beyond *Atkins.* The Supreme Court has not declared *Moore* a new rule of constitutional law retroactively applied to Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) cases. The development of new diagnostic standards does not constitute newly discovered evidence retroactively applicable to Bourgeois. The Supreme Court pronounced in *Atkins* the three criteria required for determining intellectual disability and ineligibility for execution under the Eighth Amendment. Bourgeois

6

shows no structural problem with § 2255 prevented him from having a reasonable opportunity for a reliable judicial determination of the merits of his *Atkins* claim in his first § 2255 proceeding.

Bourgeois' attempt to circumvent § 2255(h) and the strict litigation bar under § 2244(b)(2) by proceeding under § 2241 to relitigate his *Atkins* claim amounts to an invitation to abuse the writ under pre-AEDPA law. Furthermore, in addition to performing any analysis required by AEDPA, this Court must conduct a threshold *Teague v. Lane*, 489 U.S. 288 (1989) analysis. *Moore* does not announce a new substantive rule that could retroactively apply under *Teague*, and Bourgeois' *Atkins* claim does not fall within a *Teague* exception.

Finally, Bourgeois seeks to proceed in this § 2241 habeas petition to relitigate the same *Atkins* claim that he fully adjudicated in the United States District Court for the Southern District of Texas in his first § 2255 proceeding and which that court finally denied on the merits in a comprehensive decision. The relief that Bourgeois requests of this Court is to stay his execution pending a final disposition of his *Atkins* claim in the Southern District of Indiana, a request to amend his claim if necessary, and for an evidentiary hearing conducted on the merits of his

*Atkins* claim.  Bourgeois' *Atkins* claim is barred by the savings clause at § 2255(e).  Bourgeois' claim should be dismissed with prejudice and his motion for stay of execution denied.

Bourgeois' execution is scheduled for January 13, 2020.  "[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  Bourgeois does not demonstrate a significant possibility of success on the merits of his *Atkins* claim.  The United States District Court for the Southern District of Texas made the *Atkins* intellectual-disability determination that Bourgeois is not exempt from execution under the Eighth Amendment based on and applying the clinical definition of intellectual disability by the American Association on Intellectual and Developmental Disabilities (AAIDD) and American Psychiatric Association (APA), as *Atkins* directs.

The United States has a strong interest in enforcing Bourgeois' death sentence imposed by the jury on March 25, 2004, for the savage and horrific premediated murder of his two-year daughter.  "Equity must take into consideration the [United] State's strong interest in proceeding

8

with its judgment." *Gomez v. U.S. Dist. Court for N. Dist. of California*, 503 U.S. 653, 654 (1992).  The public interest mandates that Bourgeois' scheduled execution on January 13, 2020, be enforced by the United States.  This Court should deny Bourgeois' motion for stay of execution: there is no public interest or constitutional basis to grant it.

## I.

## BACKGROUND

A.    <u>Facts:  Bourgeois brutally murdered his 2-year daughter at the Corpus Christi Naval Air Station on June 27, 2002.</u>

These facts and the aggravating and mitigating evidence the parties presented to the jury at the punishment phase of Bourgeois' trial and at the evidentiary hearing held at his first 28 U.S.C. § 2255 proceeding in September 2010 through January 1, 2011, are set forth in comprehensive detail in the opinion of the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) affirming his conviction and sentence on August 25, 2005, the opinion of the United States District Court for the Southern District of Texas, U.S. District Court Judge Janice Graham Jack (Judge Jack), denying his request for post-conviction relief under 28 U.S.C. § 2255 on May 19, 2011,  and the Fifth Circuit opinion denying his request for a certificate of appealability (COA) on August 5, 2013,

9

pursuant to 28 U.S.C. § 2253(c). *See United States v Alfred Bourgeois,* 423 F.3d 501 (5th Cir. 2005), *cert. denied,* 547 U.S. 1132 (2006); *United States v Alfred Bourgeois,* No. 2:02-cr-216, No. 2:07-cv-223, 2011 WL 1930684, \*1 (S.D.Tex. May 19, 2011), *certificate of appealability (COA) denied,* 537 F. App'x 604 (5th Cir. Aug. 5, 2013), *cert. denied,* 135 S. Ct. 46 (2014).

Bourgeois brutally and savagely murdered his two-year-old daughter (JG) on the grounds of the Corpus Christi Naval Air Station, where he was making a delivery. Bourgeois systematically and savagely tortured JG during the last six weeks of her life while she was in his custody. He bit her all over her body, burned her, whipped her with belts and extension cords, beat her with his hands, a baseball bat, shoes, and other objects, duct-taped her mouth shut, and forced her to drink his urine from a jug that the kept in his truck. Bourgeois murdered his daughter by slamming her head into the window frame and dashboard of his truck. JG's murder was witnessed by AB1994 (AB), Bourgeois' other 7-year old daughter who was in the truck. AB testified that Bourgeois slammed JG's head until JG's face became "real, real sad."

10

JG was Bourgeois' two-year old biological daughter. At the time of JG's murder, Bourgeois was married to a woman (Robin) who was not JG's biological mother. Bourgeois and Robin had two biological daughters, then 7-year old AB and AB2001, who was one year old. After a court ordered Bourgeois to pay child support for JG, Bourgeois demanded visitation rights for the summer of 2002. Medical evidence established that JG was a very healthy baby with no substantial injuries when Bourgeois took physical control of her.

The trial established that Bourgeois developed a scheme to systematically torture JG and did so from the time he obtained possession of JG until he murdered her while on the federal Naval base on June 27, 2002. Circumstantial evidence, together with AB's testimony and subsequent medical evidence, established that Bourgeois murdered JG by slamming her head four times against the window inside of his tractor-trailer while seated in the driver's seat. AB, who testified at trial, described how Bourgeois held JG by the shoulders and slammed her head into the window frame and dashboard of his truck cab. The medical examiner found the ultimate cause of death to have been an impact to the head resulting in a devastating brain injury.

11

The evidence established that Bourgeois entered into a pattern of conduct aimed at controlling or killing JG, who Bourgeois referred to as a "trifling little bitch like her mother [Katrina]" and "a mother f***er." A few days after JG came to live at Bourgeois' home, and with Bourgeois proclaiming he would teach JG to swim, a 30-minute videotape captured Bourgeois tossing her in the air and letting her fall into the swimming pool where she sank until he pulled her out, coughing and gasping for breath, and to the brink of downing before he let her go. He did this again on a trip to the beach when he repeatedly held her under the waves.

Bourgeois also brutally and systematically beat JG, often with electrical cords, resulting in looped injuries, and other objects. AB witnessed Bourgeois beating JG with a belt so hard that it broke. Bourgeois beat JG with electrical cords, shoes, and a toy baseball bat until her head swelled "like a football." Bourgeois told an inmate with whom he was incarcerated prior to trial about how JG fell about ten feet at a dinosaur park, and he laughed as he said "that f***ing baby's head got as big as a watermelon." Bourgeois hit JG with all his strength in the eyes until she had to wear sunglasses to mask the injuries. AB testified that JG had black eyes from being hit by her father. AB witnessed

12

Bourgeois beat JG until she lost consciousness. Foreshadowing her murder, Bourgeois knocked JG unconscious by striking her head against the truck's steering wheel because she referred to herself by her mother's, not his, surname.

The medical evidence established that JG had over 300 injuries, including a multitude of pattern injuries which appeared to be whip marks, human bite marks, a burn mark on her foot, extensive trauma and hemorrhaging in her eyes, 110 to 140 nonspecific and pattern contusions, abrasions or excoriations, and approximately 10 separate head contusions. AB testified that she repeatedly saw Bourgeois bite JG "all over" on her hands, feet, head, and back until JG bled; that JG's hands and feet were pretty when she came to them, but got ugly from Bourgeois biting them; that JG wore socks because "she was all bitten up, and her feet looked real bad." JG's sores on her feet would not heal because Bourgeois kept pressing his thumbs into the wounds. The forensic experts found bite marks on JG's hands and back matched to Bourgeois. Bourgeois taped JG's mouth shut and burned holes in her foot the size of a cigarette lighter. Once while stopped for refueling, two-year old JG reached for a plastic Hawaiian Punch plastic bottle containing

13

urine and tried to drink it. Robin returned from the restroom and took the jug of urine away from JG, but when Bourgeois heard what happened, he poured some urine in a cup and forced JG to drink it.

Bourgeois, who at that point no longer shared a bed with Robin, would lock himself in the bedroom with JG, AB, and his other one-year old daughter. JG would spend the night tied to her potty chair under a window. Robin testified that some nights she could hear pounding in the bedroom accompanied by crying. A bloodstain found by law enforcement confirmed that one loud thump Robin heard was Bourgeois throwing JG against a wall. At some point blood was found in JG's diapers. There was some evidence of vaginal trauma, and rectal swabs after JG's death indicated the presence of semen. Bourgeois said to one of the inmates who testified at trial that JG was a "bad child" who "used to shake her butt all the time."[1]

Bourgeois' callous and cavalier attitude towards JG continued when she was dying. After having delivered the killing blows to JG at the federal Naval base, Bourgeois handed JG back to AB and left the

---

[1] *Bourgeois,* 537 F. App'x at 608 & n.15.

14

truck.  Robin, who was asleep when this happened, woke up, saw JG's motionless and limp body, unsuccessfully attempted to revive JG, and honked the horn.  Bourgeois came back, took JG out of the truck, laid her on the ground, and crafted the story: "AB forgot to close the cab door" and "JG fell from the truck."  Robin attempted CPR and paramedics then took over when they arrived.  While this was happening, Bourgeois was on the phone trying to see about his next load to Kingsville.

Robin testified that Bourgeois said he wanted to kill JG; that once he killed JG, he planned on leaving her body in the woods or in a swamp and have Robin report her as kidnapped. After Bourgeois was arrested and confined in jail, he wrote a large number of letters to his wife discussing how she poorly handled the police.  Bourgeois also made multiple telephone calls to relatives and friends making incriminating statements.  Another inmate testified that Bourgeois told him that he killed JG and was going to make it look like an accident.  Bourgeois attempted to explain away all of JG's injuries on cross examination at trial and to lay blame on Robin for many of those injuries. While confined prior to trial Bourgeois threatened to have witnesses killed.  As the

15

district court found, Bourgeois' "threats were not toothless; witnesses, including JG[ ]'s mother, were murdered before trial."[2] (DE 24).

Bourgeois' testimony at trial was that JG was alive when he drove onto the U.S. Naval base and that he did not fatally injure her. The jury did not believe him and found him guilty of first degree premeditated murder with malice aforethought. Bourgeois addressed the jury a second time at punishment, saying:

> My sympathy goes out to the soul of JG1999, my baby, her family, my family, relatives and friends, and I'm very sorry for the death of my child. It's a hurting pain and a sorrowful thing that happened. And I feel or believe that I have been wrongfully accused of this crime that I've been convicted for....
>
> So I feel like you all have been misled and I've been wrongfully convicted, and I'm just sorry for the pain and suffering, that I've been wrongfully accused for the death of my baby, and I did not kill my baby.
>
> I just want to close with that I loved JG1999, she's an infant that didn't actually come in this world and I think the real murderer got off with this crime. I just think you all should know that I have been wrongfully convicted. I feel my wife had a lot to do with this and she walked away free, and I just had to say this. If I never get an opportunity to say this to nobody else, my family, Katrina's family, JG1999 came from a lovely family. When I picked her up, when she got in my custody I had no problems with JG1999. She was a lovely kid, very lovely. I realize some of the pictures that you all seen in the swimming pool, I will say I was a little rough like that, I'm

---

[2] *Bourgeois,* 2011 WL 1930684, at *9.

like that with all my children. And I just feel you all have been wrongfully misled.

I just think I want to close with that, saying that I love my baby, I love her family, I love my family. And I thank each and every one of you for participating, the lawyers for the job they did, and for everybody that communicated. And God bless all of you all. Thank you.

*Bourgeois,* 537 F. App'x at 641. The jury was not persuaded and sentenced Bourgeois to death.

B.     Procedural History.

1.     Trial, Sentencing, and Direct Appeal, *United States v. Bourgeois,* No. 2:02-cr-216 (S.D.Tex. 2004), 423 F.3d 501 (5th Cir. 2005), *cert. denied,* 547 U.S. 1132 (2006).

On July 25, 2002, the Grand Jury for the United States District Court for the Southern District of Texas, returned a two-count indictment, Criminal No. 2:02-cr-216, charging Bourgeois with murder (unlawful killing with malice aforethought) in violation of 18 U.S.C. §§ 7 and 1111, and injury to a child in violation of 18 U.S.C. § 13 and Texas Penal Code, Section 22.04(a)(1). (Crim. Dkt. 1, 5).[3] The grand jury returned a two-count superseding indictment on April 9, 2003, alleging

---

[3] "Crim. Dkt." refers to docket entries in *United States v. Bourgeois,* No. 2:02-cr-216 (S.D. Texas). The Clerk of the District Court for the Southern District of Texas ordered that all post-conviction collateral attack pleading filed under 2:07-cv-223 be docketed under the criminal number.

premeditated murder with malice aforethought and injury to a child, to which Bourgeois pleaded not guilty. (Crim. Dkt 43).

At the status conference on July 16, 2003, the United States announced that the United States Attorney General had authorized seeking the death penalty. (Crim. Dkt. 74, 111). The grand jury returned a second superseding indictment on July 22, 2003, alleging a single count of premeditated murder with malice aforethought and alleging special findings, including all four of the statutory intent elements and three statutory aggravating factors. On July 23, 2003, the United States filed the Notice of Intent to Seek the Death Penalty ("Death Notice"), in which it added two non-statutory aggravating factors.[4]

---

[4] The indictment alleged the following statutory intent elements: Bourgeois (A) intentionally killed the victim, (B) intentionally inflicted serious bodily injury that resulted in the death of the victim, (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, [other than one of the participants in the offense], who died as a direct result of the act; and (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, [other than one of the participants in the offense], and constituted a reckless disregard for human life and the victim died as a direct result of the act.  Crim. Dkt. 78; *see* 18 U.S.C. § 3591(a)(2).

The three alleged statutory aggravating factors were that Bourgeois: (1) committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim; (2) committed the offense after substantial planning and premeditation to cause the death of a person; and (3) that the victim was particularly vulnerable due to youth or infirmity. Crim. Dkt 78; *See* 8 U.S.C. § 3592(c)(6), (c)(9) and (c)(11).

Bourgeois pleaded not guilty to the second superseding indictment on July 25, 2003. The guilt/innocence phase of Bourgeois' capital trial began on March 2, 2004, and ended on March 16, 2004, with a guilty verdict for first degree premeditated murder with malice aforethought. The capital trial resumed with the punishment phase on March 22, 2004, and ended on March 24, 2004, with a unanimous jury verdict that Bourgeois be sentenced to death.  The jury found that the government had proven all of the statutory and non-statutory factors and that Bourgeois had shown two mitigating factors:  six jurors found that he was under stress, and all found that he was driving across the country in a truck with three children and another adult in the cab of an 18-wheeler truck.   The jury unanimously found that the aggravating factors outweighed the mitigating factors and recommended a death sentence. The district court entered the judgment and order implementing the judgment on March 25, 2004, sentencing Bourgeois to death. *See Bourgeois,* 537 F. App'x at 606-09.

---

The two alleged non-statutory aggravating factors were: (1) future dangerousness of the defendant, and (2) victim impact evidence. Crim. Dkt. 79.

19

Bourgeois appealed his conviction and sentence to the Fifth Circuit, raising four issues:

(1) a Fifth Amendment claim that the United States failed to allege the required statutory intent elements and aggravating factors in the indictment, *id.* at 506-08;

(2) an Eighth Amendment claim challenging the application of the intent element under 18 U.S.C. § 3591(a)(2)(D), *id.* at 508-09;

(3) a due process claim regarding this Court's delegation of ministerial powers in how and where the sentence of death will be carried out, *id.* at 509-10; and

(4) a claim that the aggravating factors alleged in his case were vague and ambiguous and violated the Eighth Amendment, *id.* at 511-12.

The Fifth Circuit affirmed his conviction and sentence in all respects on August 25, 2005, concluding that "[t]his is not a close case," and that "Bourgeois fail[ed] to prove there was any error, much less plain error, in any aspect of his trial." *Bourgeois*, 423 F.3d at 512. The Supreme Court denied certiorari review on May 15, 2006. *Bourgeois v. United States,* 547 U.S. 1132 (2006).

20

2.    <u>28 U.S.C. § 2255, Motion to Vacate, *United States v. Bourgeois*, Nos. 2:02-cr-216, 2:07-cv-223, 2011 WL 1930684 (S.D.TX, May 19, 2011).</u>

The district court appointed Mr. Victor J. Abreu, Bourgeois' present counsel of record, and Mr. Michael Wiseman, both with the Federal Community Defender Office for the Eastern District of Pennsylvania, Capital Habeas Corpus Unit. ROA-5th.138. On May 14, 2007, Bourgeois filed "Petitioner's Motion for Relief Pursuant to 28 U.S.C. § 2255 or in the Alternative Pursuant to 28 U.S.C. § 2241" with appendices, 5thCir.[5]338-474, 477-915, and a supplemental motion with appendices on October 5, 2007, *see* 5thCir.928-1077, 1079-1165. The United States filed its answer and response on October 15, 2008. (Crim. Dkt. 442-443). Bourgeois filed his reply with appendices to the United States' answer on June 26, 2009, which are contained in the record at 5thCir.1356-474, 1476-755.[6]

---

[5] A complete copy of the Fifth Circuit's record on appeal from Bourgeois' first 28 U.S.C. § 2255 proceeding is contained in *United States v. Bourgeois,* No. 11-70024 (5th Cir. 2013). Because the record is voluminous, the United States files that record on appeal as appendices to this opposition for purpose of record completeness. This record is cited as "5thCir." followed by the posted number at the bottom right-hand corner of each page.

[6] Bourgeois filed additional supplemental and amended motions relating to claims of ineffective assistance and remaining issues. *See, e.g.,* 5thCir.4436-512, 4723-792, 5960-6061.

Bourgeois raised fourteen claims.[7]  On May 19, 2011, the district court entered its Memorandum, Order, and Final Judgment, deciding Bourgeois issues on the merits and denying him relief under 28 U.S.C. §

---

[7]  (1) Bourgeois is mentally retarded, making him ineligible for execution under *Atkins*, *Bourgeois,* 2011 WL 1930684 at *22-46.

(2) Trial counsel provided ineffective assistance of counsel at the punishment phase of trial by failing to present available mitigating evidence, including that of his alleged mental retardation. *Id.* at *46-70.

(3) Bourgeois' conviction violates due process because the fatal injury occurred outside the territorial jurisdiction of the United States. Trial counsel should have disputed the location of the crime.  *Id.* at *70-79;

(4) Trial counsel provided ineffective assistance by failing to present available expert testimony that would have shown that Bourgeois did not sexually assault the victim.  *Id.* at *80-89.

(5) Trial counsel provided ineffective assistance by not litigating a *Daubert* challenge to testimony from Dr. Senn and Dr. Chrz concerning bite-mark evidence. *Id,* at 93-95.

(6) Trial counsel provided ineffective assistance by not litigating a *Daubert* challenge to testimony from Dr. Oliver concerning digitally enhanced autopsy photographs.  *Id.* at *89-93.

(7) The Government *violated Brady v. Maryland*, 373 U.S. 83 [ ] (1963), by failing to disclose that four inmates were promised some benefit for testifying against Bourgeois.  *Id.* at *96-100.

(8) Trial counsel labored under a conflict of interest because of representation of clients associated with this case.  *Id.* at *100-101.

(9) The Government engaged in misconduct by making improper argumentative statements in the guilt/innocence and penalty phases. *Id.,* at *101-04.

(10) Trial counsel provided ineffective assistance by not rebutting evidence of Bourgeois' indifferent demeanor at trial. *Id.* at *105-06.

(11) A witness improperly relied on Bourgeois' interactions with counsel as a basis to formulate an adverse opinion about him  *Id.* at 106-107.

(11) Appellate counsel ineffectively failed to advance several claims.  *Id.* at *108-09.

(13) The cumulative effect of the claimed errors resulted in a constitutional violation.  *Id.* at *110.

(14) The method by which the government would carry out Bourgeois' execution violates the Constitution.  *Id.* at *110.

2255(a). *Bourgeois,* 2011 WL 1930684, at *1-111.  The district court's opinion details defense counsel's pretrial preparation and investigation, *id.* at *6-9, the guilt and innocence phase of trial, *id.* at *9-18, and a summary of the § 2255 proceeding and evidentiary hearing, *id.* at *19-22.

The court carefully and comprehensively analyzed Bourgeois' *Atkins* claim of intellectual disability and ineligibility for execution, *id.* at *22-46, and his claim of ineffective assistance of counsel, *id.* at *46-71, including trial counsels' failure to develop evidence of mental retardation as mitigating punishment evidence, *id.* at *44-45.  Regarding the ineffective assistance of counsel claims, the court's analysis includes detailed accounts of defense counsel's investigation and preparation of mitigating evidence, *id.* at *49-51, trial counsel's preparations before the guilt/innocence phase of trial and defense strategies, *id.* at 51-54, the "unpresented evidence" of childhood abuse by lay witnesses, *id.* at *55-58, and expert testimony, *id.* at *58-69.

At the § 2255 evidentiary proceeding, the district court allowed Bourgeois to present testimony and evidence supporting nearly all of his § 2255 claims without imposing any limitation. *Id.* at *20.  In that regard, the court "liberally allowed Bourgeois to prepare the factual basis for his

23

post-judgment claims through expert and investigative assistance." *Id.* The court held a week-long evidentiary hearing for the parties to present evidence and placed no limitation on Bourgeois' ability to call witnesses. *Id.* at *20, 55. "Testimony during that week often extended long afDter normal hours. Aside from the witnesses called during that hearing, the [court] heard testimony at different dates and allowed the taking of video depositions of other witnesses." *Id.* at *20. The court found that the parties "developed a rich factual record through the submission of written interrogatories, declarations, and record documents." *Id.* The parties presented extensive in-court testimony of medical experts and lay witnesses, video taped depositions, interrogatories, affidavits, and documentary reports related to Bourgeois' *Atkins* claim and ineffective assistance of counsel claim for failing to present his alleged mental retardation as mitigating evidence at punishment. [8] The court informed

---

[8] The Fifth Circuit record on appeal in No. 11-70025, includes attachments:

- 5thCir.6151-75 (telephone conference on December 14, 2009);
- 5thCir.1904-71 (hearing on April 20, 2010);
- 5thCir.1976-95 (telephone conference on May 6, 2010);
- 5thCir.2061-85 (telephone conference on June 7, 2010);
- 5thCir.2087-135 (telephone conference on June 9, 2010)

24

- 5thCir. 2201-348 (evidentiary hearing on September 10, 2010, including testimony of Dr. Glebort at 2210-82, 2294-348);

- 5thCir.2698-3104 (evidentiary hearing on September 20, 2010, including testimony of: Dr. Swanson at 2704-895; Dr. Weiner at 2895-966; Dr. Toomer at 2697-3075; Kathleen Kaib at 3075-93);

- 5thCir.3403-48 (evidentiary hearing on September 21, 2010, including testimony of: Claudia Williams at 3405-93; Beverly Clayton Frank at 3494-531; Brenda Clayton Goodman at 3532-82; Dr. Mark Douglas Cunningham at 3582-723; Carl Kevin Henry at 3723-64; Donald Reese at 3765-95; Murray Bourgeois at 3796-819; Jon Curtis Daily at 3820-46);

- 5thCir.2395-568, 3849-4170 (evidentiary hearing on September 22, 2010, including testimony of: Elizabeth Ann Johnson at 2395-568; Dr George Walker Holden at 3856-68; Jennifer Valdez at 3872-79; Charles Michael Bowers at 3881-972; attorney John Gilmore at 3794-4076; Kerry Dion Brown at 4078-99; Timothy Lynn Allen at 4100-04; AFD Gerald Bierbaum at 4105-55);

- 5thCir.3106-3401 (evidentiary hearing on September 23, 2010, including testimony of: Danny Lee Clark at 3109-44; Robert Patterson at 3158-76; William D. Shotts at 3177-306; Carlin Christopher Key at 3208-45; Rhonda Michelle Davis at 3246-92; Dr. Jack Randall Price at 3292-339);

- 5thCir.2569-662, 4171-4413 (evidentiary hearing on September 24, 2010, including testimony of: Jerrilyn Conway at 2571-661; Dr. Jack Randall Prices at 4192-225; Dr. Roger Byron Moore, Jr. at 4236-4412);

- 5thCir.4516-661 (transcript of videotaped deposition of Dr. William Russell Oliver on October 28, 2010);

- 5thCir.4661-705 (transcript of videotaped deposition of Manfred Schenk) on October 28, 2010;

- 5thCir.4869-935 (transcript of videotaped deposition of Dr. Randall Price on November 10, 2010);

- 5thCir.4982-5018 (telephone conference on December 1, 2010);

- 5thCir.6176-82 (telephone conference on December 6, 2010);

- 5thCir.5047-221 (transcript of video-teleconference of Dr. Jan Edward Leestman on January 10, 2011);

25

that it "spent many hours reviewing the testimony of the out-of-court witnesses" and "afforded Bourgeois a full and fair opportunity to develop his arguments." *Id.*

The district court's order and opinion on May 19, 2011, established that the court properly applied *Atkins'* criterion for intellectual disability (mental retardation) as defined by the AAIDD and the APA in AAIDD-11 (11th edition, 2010) and the DSM-IV-TR (2010): (1) significantly subaverage intellectual functioning, (2) existing concurrently/ accompanied by related significant limitations in adaptive functioning in at least two adaptive skills, (3) the onset of which occurs prior to the age of 18. *Bourgeois*, 2011 WL 1930684 at 23 (citing *Atkins*, 536 U.S. at 309 n.3). Summarized, the district court scrupulously adhered to the AAIDD and APA clinical definitions in determining Bourgeois' *Atkins* intellectual functioning and adaptive functioning. The court determined, based on a comprehensive analysis of the medical experts' clinical assessment and judgment, that Bourgeois did not show by a preponderance of the

---

- 5thCir.5226-445, 5579-694 (miscellaneous hearing on January 13, 2011, including testimony of Dr. Rouse at 5228-79; arguments of counsel at 5282-443, including the *Atkins* standard at 5282-5346; testimony of William Edward May, Jr. at 5582-95; James Sales at 5593-620; Debra Hohle at 5621-57; AUSA Booth at 5662-86).

26

evidence that he is intellectually disabled and categorically exempted from execution under the Eighth Amendment. *Id.* at 22-46 ("Bourgeois' Alleged Mental Retardation Claim" (*22); "Background of Bourgeois' Atkins Claim" (*23-26); "Intellectual Functioning" (*25); "Bourgeois' IQ Score " (*25-26); "Legal Evaluation of Intelligence in *Atkins* cases" (*26-27); "Bourgeois' IQ Does Not Persuasively Fall at the Lower End of the Confidence Interval" (*27-31); "Significant Limitations in Adaptive Skill Areas" (*31-33); "Assessment by Testing Instruments" (*33-37); "Lay Accounts of Bourgeois' Functioning" (*37-39); "Bourgeois' Adaptive Abilities (*40); "Conceptual Domain-Functional Academics" (*40-42), "Practical Domain—Health and safety" (*42-43); "Social Domain—Social /interpersonal skills" (*43-44); "Manifestation of Limitation Before Age 18" (*44); "Trial Counsel's Failure to Develop Evidence of Mental Retardation" 44-46). In conjunction with Bourgeois' *Atkins* claim, the district court decided the merits of Bourgeois' claim of ineffective assistance of counsel for failing to develop evidence of his mental retardation at the time of sentencing.  *Id.* at *44-46, 46-71.

Finding that it had "afforded Bourgeois a full and fair opportunity to show whether mental retardation precludes his execution," and

27

referring directly to *Atkins,* the court found that, "Bourgeois' intellectual and adaptive functioning, while possibly low, does not bear the characteristics that would render his sentence a cruel and unusual punishment." *Id.* at \*46.

For Bourgeois' *Atkins* claim and each of the other claims he presented in his first § 2255 motion, the district court found "no error invalidating Bourgeois' capital conviction or death sentence." *Id.* at \*111. The court found that Bourgeois "failed to show that his sentence was imposed in violation of the laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[;]" and that "his claims do not merit section 2255 relief." *Id..* The court additionally found that Bourgeois had "not shown that [the Court of Appeals for the Fifth Circuit] should authorize any issue for appellate review" and denied a COA of any issue for consideration by the Fifth Circuit. *Id.* at \*111.

3. *United States v. Bourgeois,* 537 F. App'x 604 (5th Cir. 2013) (per curiam), *cert. denied,* 135 S. Ct. 46 (2014).

Bourgeois requested the Fifth Circuit grant a COA limited to the following three issues presented in his § 2255 petition:

1)     The district court erred in dismissing, without an evidentiary hearing, his claim that trial counsel were ineffective for failing to challenge jurisdiction.

2)     Trial counsel were ineffective at both phases of trial for failing to present available expert testimony to rebut the government's assertion that JG was sexually assaulted.

3)     Trial counsel provided ineffective assistance during the punishment phase by failing to pursue and present mitigating evidence of his life history of abuse, neglect and abandonment, personality disorder, cognitive deficits, and the combined impact of his mental-health problems.

*Bourgeois,* 537 F. App'x at 610.

The Fifth Circuit denied Bourgeois' request for COA on August 5, 2013; it made extensive factual and legal findings with respect to each of those issues and resolved each on the merits. *See id.* at 611-17 (Issue 1), 617-31 (Issue 2), and 631-65 (Issue 3); *see also United States v. Bourgeois,* No. 11-70024, 2012 WL 2884266 (July 9, 2012) (5th Cir. Brief of the United States). So doing, the Fifth Circuit concluded that Bourgeois "ha[d] not made a substantial showing of the denial of a constitutional right, [that] the issues he presents were inadequate to deserve encouragement to proceed further, and [that] no reasonable jurist could debate the district court's assessment of his claims." *Id.* at 665. The Supreme Court denied Bourgeois' petition for writ of certiorari (No. 13-

8397) on October 6, 2014. *Bourgeois v. United States,* --- U.S. ---, 135 S. Ct. 46 (2014).

Pertinent to this 28 U.S.C. § 2241 habeas petition, the Fifth Circuit expressly found that "Bourgeois did not request a COA of the remaining claims his raised in his § 2255 petition." *Bourgeois,* 537 F. App'x at 610 n. 7. This included Bourgeois' claim that he is ineligible for execution under *Atkins.* Accordingly, Bourgeois waived appellate review of his *Atkins* claim, including whether he was afforded a full and fair opportunity to adjudicate his intellectual-disability *Atkins* claim and ineligibility for execution, and whether the district court's *Atkins* determination was unreasonable and violated the Eighth amendment.

4.    *In re Bourgeois*, 902 F.3d 446 (5th Cir. 2018).

Well over four years later, on March 27, 2018, Bourgeois filed in the United States District Court for the Southern District of Texas a "Second Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255," pursuant to 28 U.S.C. § 2244(b)(3)(A), for purposes of relitigating his *Atkins* claim. *See In re Alfred Bourgeois*, U.S. App. Lexis, No. 18-40270, Doc. 00514404925, ("Second Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255" (filed

March 28, 2019)).[9]    On March 28, 2018, pursuant to 28 U.S.C. § 2244(b)(3)(B), Bourgeois moved the Fifth Circuit for an "Order Authorizing the Southern District of Texas to Consider a Successive Petition under 28 U.S.C. § 2255." *See In re Alfred Bourgeois,* U.S. App. Lexis, Doc. Doc. 00514404917 ("Motion for Order Authorizing the Southern District of Texas to Consider a Successive Petition Under 28 U.S.C. § 2255" (filed March 28, 2019)).

In that motion, Bourgeois acknowledged that he had previously raised his *Atkins* claim asserting he is intellectually disabled and his death sentence is unconstitutional, and that the district court denied his *Atkins* claim on the merits. *Id.* at 7-8.  Bourgeois also acknowledged that he did not seek a COA on his *Atkins* claim based on Fifth Circuit precedent that he alleged the district had relied on to resolve his claim. *Id.* at 8.  He argued generally that the Supreme Court's decision in *Moore v. Texas (Moore I),* 137 S. Ct. 1039 (2017), invalidated the Fifth Circuit's approach to determining eligibility for *Atkins* relief, thereby making the

---

[9] These documents are electronically available via PACER and through Lexis-Nexis. However, they were unavailable to the undersigned through Westlaw.

rule articulated in *Atkins* available to him for the first time and his claim viable under 28 U.S.C. § 2255(h)(2).   *Id.* at 8.

The United States disagreed, on grounds that the Supreme Court had not made *Moore* retroactively applicable to cases on collateral review (citing to *In re Payne,* 722 F. App'x 534 (6th Cir. 2018), *Williams v. Kelley,* 858 F.3d 464, 474 (8th Cir. 2017), and other cases), and that this was the issue underlying his motion to certify a successive § 2255 motion. The United States' position was, and is, that Bourgeois failed to make a prima facie showing that his claim has not previously been presented in a prior § 2255 application, and that he did not satisfy the 28 U.S.C. § 2244(b)(2) exceptions to certify a successive *Atkins* claim in a second § 2255 motion. The United States' position was, and is, that Bourgeois failed to demonstrate he did not present his *Atkins* claim in his prior § 2255 motion, that the record unequivocally showed that he in fact had raised his *Atkins* claim in his first § 2255 motion and the district court denied that claim on the merits, and that the strict litigation bar in § 2244(b)(1) required his successive motion be dismissed.   *See In re Bourgeois,* U.S. App. Lexis, No. 18-40270, Doc. 00514529907 (United States' Opposition for Leave to File Successive 28 U.S.C. § Petition (filed June 26, 2018));

32

*see also* 28 U.S.C. § 2241(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.").

On August 23, 2018, the Fifth Circuit found that Bourgeois' "successive § 2255 motion present[ed] only a single claim that was already presented in his original motion." *In re Bourgeois,* 902 F.3d at 446 (published September 24, 2018). Finding that "[e]very other circuit to take up the question agrees," and adopting the Seventh Circuit's decisions in *Bennett,* 119 F.3d at 469, and *White,* 371 F.3d at 901, the Fifth Circuit held that "the larger statutory context favors applying § 2244(b)(1)'s strict litigation bar to federal prisoners." *In re Bourgeois,* 902 F.3d at 448. The Fifth Circuit held that Bourgeois was barred from relitigating his *Atkins* claim under § 2241 and denied Bourgeois' request for authorization to proceed on a successive § 2255 motion on that ground. *Id.*

On August 27, 2019, the district court entered its "Memorandum and Order" finding that "the Court held an evidentiary hearing in which expert and lay witnesses gave testimony relating to [Bourgeois'] *Atkins* claim," that the "Court denied Bourgeois' 2255 in a lengthy Memorandum

33

and Order which included substantial discussion of the *Atkins* issue," and that "Bourgeois did not seek appellate review of the denial of his *Atkins* claim." *Bourgeois,* No. 2:07-cr-223 (S.D.Tex Aug. 28, 2019).  Finding that the Fifth Circuit denied Bourgeois' motion to proceed in a successive § 2255 motion and did not authorize a successive motion, the district court dismissed Bourgeois' second § 2255 motion without prejudice.  *Id.*

## II.

## ARGUMENT

**A.   BECAUSE BOURGEOIS CANNOT SHOW THAT 28 U.S.C. § 2255 IS "INADEQUATE OR INEFFECTIVE" TO TEST THE LEGALITY OF HIS DETENTION, THIS COURT SHOULD DISMISS THE ATKINS CLAIM HE PRESENTED UNDER 28 U.S.C. § 2241.**

In his petition for writ of habeas corpus, Bourgeois argues he is intellectually disabled and therefore ineligible for the death penalty under *Atkins* and its progeny.  Because Bourgeois could have, and did, fully explore this claim during extensive proceedings under 28 U.S.C. § 2255, this Court should deny and dismiss the current petition.

In *Atkins,* the Supreme Court held that executing an offender who has mental retardation (now intellectual disability) violates the Eighth Amendment ban on excessive punishments.  *Atkins*, 536 U.S. at 321.

34

*Atkins* adopted the clinical definition of intellectual disability: significantly subaverage intellectual functioning, deficits in adaptive functioning, and onset of these deficits before the age of 18.   *Id.* at 318. Since *Akins,* the Supreme Court has consistently confirmed *Atkin's* three-prong criterion as the basis for determining whether a defendant is intellectually disabled and therefore death penalty-ineligible.

The Supreme Court has, on several occasions, evaluated the appropriate clinical standards to use in determining whether an inmate suffers from subaverage intellectual functioning or deficits in adaptive functioning.  Each time, the Court's opinion has served to underscore the validity of *Atkins* and not a new rule of constitutional law.  In *Hall v. Florida,* 572 U.S. 701, 704, 710 (2014), the Supreme Court, holding that intellectual disability "is a condition, not a number," embraced *Atkins'* definition of intellectually disabled, but rejected as unconstitutional a Florida law that categorically restricted *Atkins* claims to defendants with an IQ score of 70 or less. The Supreme Court concluded in *Hall* that, "when a defendant's IQ score falls within the test's acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony

35

regarding adaptive deficits." *Id.* at 723. The ruling did not alter any Eighth Amendment threshold, it simply recognized that the Court does not author medical standards.

Likewise in *Moore v. Texas (Moore I),* the Supreme Court instructed that adjudications of intellectual disability should be "informed by views of medical experts." 137 S. Ct. 1039, 1044 (2017) (citing *Hall,* 572 U.S. at 722). The Supreme Court affirmed *Atkins'* criterion, finding the Texas Court of Criminal Appeals' (CCA) conclusion that Moore's IQ score established he was not intellectually disabled was irreconcilable with *Hall.* *Id.* at 1050. The Supreme Court held that it "do[es] not end the intellectual-disability inquiry, one way or the other, based on Moore's IQ score." *Id.* "Rather, in line with *Hall,* [the Court] require[s] that courts continue the inquiry and consider other evidence of intellectual disability where an individual's IQ score, adjusted for the test's standard error, falls within the clinically established range for intellectual-functioning deficits." *Moore I,* 137 S. Ct. at 1050.

The Supreme Court reaffirmed *Atkins'* criterion in *Moore v. Texas (Moore II),* --- U.S. ---, 139 S. Ct. 666 (2019), holding that the CCA's decision on remand was "inconsistent with our opinion in [*Moore I*]." 139

36

S. Ct. at 670. "*Moore II* in effect applies *Moore I* to the record before the Texas Court of Criminal Appeals" and is "properly seen as an enforcement of the mandate rule." *Elmore v. Shoop*, 1:07-CV-776, 2019 WL 3423200, at *5 (S.D. Ohio July 30, 2019). Like *Hall* and *Moore I, Moore II* "does not create a new substantive constitutional right which is retroactively applicable on collateral review." *Id.; see Smith v. Sharp,* 935 F.3d 1064, 1084 (10th Cir. 2019) ("[T]he Supreme Court's post-*Atkins* jurisprudence has expressly confirmed that its reliance on the clinical standards endorsed in *Atkins* constitutes a mere application of that case."). In sum, *Atkins* remains the standard for evaluating claims of mental retardation and/or intellectual disability.

1.   Section 2255 provides the exclusive means for a federal prisoner to collaterally attack his conviction or sentence.

"As a general matter, § 2255 provides the exclusive means for a federal prisoner to collaterally attack his conviction or sentence." *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019); *see Chazen v. Marske, --- F.3d ---* 2019 WL 4254295 (7th Cir. Sept. 9, 2019) ("[A] federal prisoner wishing to collaterally attack his conviction must do so under § 2255 in the district of conviction."); *Kramer v. Olson,* 347 F.3d 214, 217 (7th Cir. 2013) ("A Section 2255 motion is ordinarily the 'exclusive means for a

federal prisoner to attack his conviction."); *Hill v. Werlinger,* 695 F.3d 644, 647-48 (7th Cir. 2012) (same); *see also Garza v. Lappin,* 253 F.3d 918, 920-23 (7th Cir. 2001) (examining the interplay between 28 U.S.C. § 2255 and 28 U.S.C. § 2241).

The interplay between § 2255 and § 2241, the traditional writ of habeas corpus, was recently explained in *Fulks v. Krueger,* --- F.Supp.3d ---, No. 2:15-cv-33-JRS-MJD, 2019 WL 4600210, at *2 (S.D. Ind. Sept. 20, 2019). There, the court observed, "Prior to the enactment of 28 U.S.C. § 2255 in 1948, federal prisoners wishing to file a collateral attack on their convictions or sentences were required to petition for a writ of habeas corpus—codified at 28 U.S.C. § 2241—in the federal district court in which they were incarcerated.'" *Id.* (quoting *In re Davenport,* 147 F.3d 605, 608 (7th Cir. 1998)). In enacting § 2255, Congress crafted a new procedure that diverted federal prisoner habeas attacks from the district of confinement into the "'more convenient' jurisdiction of the sentencing court," *United States v. Hayman,* 342 U.S. 205, 219 (1952), while still "afford[ing] federal prisoners a remedy identical in scope to federal habeas corpus," *Davis v. United States*, 417 U.S. 333, 343 (1974). To that end, § 2255(a) provides that "[a] prisoner in custody ... claiming the right

38

to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

In this case, the record establishes that Bourgeois raised his *Atkins* claim in his first § 2255 proceeding his *Atkins* claim and his contention that his trial attorney ineffectively failed to present evidence of mental retardation at the punishment phase of trial.  In 2010, the district court afforded Bourgeois a week-long evidentiary hearing to present evidence and argument supporting his *Atkins* claim and ineffective assistance of counsel claim, without imposing any limitation on the evidence he presented or the arguments he made.  Following the hearing and other evidentiary proceedings, the court issued an opinion and final judgment denying Bourgeois' *Atkins* and ineffective assistance of counsel claims.

The district court's opinion is comprehensive and directly on point on both issues. *Bourgeois,* 2011 WL 1930684, at *2-70.   Just as 28 U.S.C. § 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner, *see Cullen v.*

39

*Pinholster,* 563 U.S. 170, 181-87 (2011), so does § 2255 limit the power of a federal court to grant successive habeas relief to a federal prisoner.

2.  <u>The remedy afforded by § 2255 functions as an effective substitute for § 2241, not as an "in addition to."</u>

"The history makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis,* 417 U.S. at 343. "In general, federal prisoners who wish to attack the validity of their convictions or sentences are required to proceed under § 2255." *United States v. Prevatte,* 300 F.3d 792, 799 (7th Cir. 2002) (quoting *Garza,* 253 F.3d at 921). "As a rule, the remedy afforded by section § 2255 functions as an effective substitute for the writ of habeas corpus, [28 U.S.C. § 2241], that it largely replaced.'" *Fulks,* 2019 WL 4600210, at *2 (quoting *Webster v. Daniels,* 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc)); *Brown v. Caraway,* 719 F.3d 583, 586 (7th Cir. 2013) ("Federal prisoners who seek to bring collateral attacks on their conviction or sentences must ordinarily bring an action under 28 U.S.C. § 2255, 'the federal prisoner's substitute for habeas corpus.'") (internal citation omitted). It does not follow, however, that habeas corpus relief under 28 U.S.C. § 2241, or 28 U.S.C. § 1651, is a substitute for § 2255.

Congress' original intent in codifying § 2255 was that this new motion be used instead of, not in addition to, the traditional habeas corpus remedy.

The fact "that one has lost the right to relief under § 2255 does not automatically mean that one gets relief under § 2241." *Cooper v. United States*, 199 F.3d 898, 901 (7th Cir. 1999). "It is only when a fundamental defect exists in the criminal conviction—a defect which cannot be corrected under § 2255—that we turn to § 2241." *Id.* "[I]n the overwhelming majority of cases § 2255 specifically prohibits prisoners from circumventing § 2255 and challenging their convictions or sentences through a habeas petition under § 2241." *Prevatte*, 300 F.3d at 799 (quoting *Garza*, 253 F.3d at 921)).

As enacted in 1948, and as it appears today in subsection (e), § 2255 contains an exclusivity provision, referred to as the "savings clause," stating that the district court "shall not" entertain a federal habeas prisoner's application for a writ of habeas corpus "unless it also appears that the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The savings clause was dormant for the first half-century after its enactment. During that time § 2255's adequacy was never seriously questioned because there

41

were no categorical restrictions on the filing of repetitive § 2255 motions. Although successive motions could be dismissed under modified res judicata principles like "abuse of the writ," courts could entertain them on the merits when the "ends of justice" so required. *See Sanders v. United States*, 373 U.S. 1, 12 (1963); see also *Peoples v. United States*, 403 F.3d 844, 847 (7th Cir. 2005).

The enactment of the AEDPA in 1996 altered this landscape, indirectly causing the savings clause to take on new-found importance. The AEDPA sought to enhance the finality of criminal judgments by "dramatically limit[ing] successive attempts at [postconviction] relief." *Stewart v. United States*, 646 F.3d 856, 859 (11th Cir. 2011); *see also Tyler v. Cain*, 533 U.S. 656, 661 (2001). To that end, the law prohibits a defendant from filing a "second or successive" collateral attack unless he first applies to the court of appeals "for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A).  Pursuant to § 2244(b)(1), a "claim presented in second or successive application under section [2255] that was presented in a prior application shall be dismissed."  *See Taylor v. Gilkey,* 314 F.3d 832, 836 (7th Cir. 2002); 28 U.S.C. § 2244(b)(1).

42

A claim presented in a second or successive § 2255 that was not presented in a prior § 2255 shall also be dismissed unless "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2244(b)(2)(A), or "the factual predicate for the claim could not have been discovered through the exercise of due diligence," and "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convicting evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," 28 U.S.C. § 2244(b)(2)(B)(i)-(ii).  The exception under § 2244(b)(2)(A) may be satisfied only if the Supreme Court has held that the new rule of constitutional law is retroactively applicable to cases on collateral review.  *Tyler v. Cain,* 533 U.S. at 661.

In conformity with § 2244(b), § 2255(h) "sharply limits the ability of a prisoner to bring a second or successive motion under that section." *Shepherd v. Krueger,* 911 F.3d 861, 862 (7th Cir. 2018), *cert. denied,* 139 S. Ct. 1582 (2019).  A prospective second or successive movant must show either (1) newly discovered evidence that by clear and convincing

43

evidence shows that no reasonable factfinder would have found the movant guilty of the offense, 28 U.S.C. § 2255(h)(1), or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, 28 U.S.C. § 2255(h)(2). "[A] prisoner may not file 'what amounts to a motion for reconsideration under the guise of a separate and purportedly 'new' application when the new application raises the same claim that was raised and rejected in the prior application." *In re Jones,* 830 F.3d 1295, 1297 (11th Cir. 2016) (internal citations and marks omitted).

> 3.    Section 2241 does not permit Bourgeois to circumvent § 2255's limits on second or successive motions.

The record establishes that Bourgeois unsuccessfully raised his *Atkins* claim in his first § 2255 proceeding, *see Bourgeois*, 2011 WL 1930684 at *22-44, and he requested authorization for a second or successive § 2255 proceeding. *See In re Bourgeois,* U.S. App. Lexis, No. 18-40270, Doc. 00514529907 (United States' Opposition for Leave to File Successive 28 U.S.C. § 2255 Petition (June 26, 2018)). The Fifth Circuit determined "Bourgeois' successive § 2255 motion presents only a single claim that was already presented in his original motion" and denied his request for authorization under § 2241(b)(1). *United States v Bourgeois,*

44

902 F.3d 446, 447-48 (5th Cir. 2018). In so doing, the Fifth Circuit joined the Seventh Circuit in holding that "§ 2244(b)(1)'s strict litigation bar is incorporated by 28 U.S.C. § 2255(h), the provision governing a federal prisoner's successive motion," *id.* (citing *Bennett v. United States,* 119 F.3d 468, 469 (7th Cir. 1997), and that Bourgeois was barred from relititgating his *Atkins* claim. *See Taylor,* 314 F.3d at 836 (analogizing § 2255 to § 2254 cases for purpose of limitations under 2244) (citing *Bennett,* 119 F.3d at 468); *see also White v. United States,* 371 F.3d 900, 901 (7th Cir. 2004) (rejecting the argument that § 2241(b)(1) applies only to 28 U.S.C. § 2254 cases on the ground that § 2255 contains no provision directly corresponding to § 2244(b)(1)).

"If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases." *Tyler v. Cain,* 533 U.S. at 661 (citing to 28 U.S.C. § 2244(b)(1)). As the Supreme Court holds, "if the prisoner asserts *a claim that was not presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions*," one of which is for claims relying on new rules of constitutional law. *Id.* (citing 28 U.S.C. § 2244(b)(2)(A)) (emphasis added)).

45

4.    Bourgeois' *Atkins* claim does not meet the requirements of § 2255(h) for a successive motion.

As indicated, § 2255 contains two provisions applicable to Bourgeois: a second or successive § 2255 petitions under subsection (h) and the "savings clause" under subsection (e). The first, § 2255(h), bars Bourgeois from filing second or successive § 2255 petitions except in two narrow circumstances: (1) persuasive new evidence of his innocence of the crime; or (2) a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review. *Garza*, 253 F.3d at 921.

Regarding the first exception, § 2255(h)(1), Bourgeois raised no claim of newly discovered evidence in the request to proceed on a successive § 2255 that he filed in the Southern District of Texas and the Fifth Circuit, and he presented no new evidence supporting a claim of actual innocence. *See Hare v. United States,* 688 F.3d 878, 880 n.2 (7th Cir. 2012) (holding that the "newly discovered evidence" exception in § 2255(h)(1) applies to evidence that concerns guilt; that "there is no "actually innocent of the sentence" exception in § 2255(h)" (citing *Taylor,* 314 F.3d at 835-86). "As explained in *Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997), 'a successive motion under 28 U.S.C. § 2255 ... may not be filed on the basis of newly discovered evidence unless the

46

motion challenges the conviction and not merely the sentence.' That is an unavoidably correct reading of 28 U.S.C. § 2255(h)(1), whether we like it or not." S*usi nka v. United States*, 855 F.3d 728, 729 (7th Cir. 2017). Bourgeois does not claim any new evidence of his intellectual disability that had not been discovered before his first § 2255 proceeding.

Regarding the second exception, § 2255(h)(2), to make a prima facie showing to proceed with a second or successive § 2255 application, Bourgeois must identify a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h)(2). Bourgeois cites *Hall* and *Moore* but neither is a new rule of constitutional law made retroactively applicable to collateral cases by the Supreme Court.[10]

---

[10] *See In re Bowles*, 935 F.3d 1210, 1220 (11th Cir. 2019) (holding *Moore I* cannot be applied retroactively) (citing *Smith v. Comm'r, Ala. Dep't of Corr.*, 924 F.3d 1330, 1338–39 (11th Cir. 2019)); *In re Payne,* 722 F. App'x 534, 537-39 (6th Cir. 2018) (holding that *Moore I* and *Hall* "merely created new procedural requirements that do not amount to 'watershed rules of criminal procedure"); *Elmore v. Shoop*, 1:07-CV-776, 2019 WL 3423200, at *5 (S.D. Ohio July 30, 2019) (holding *Hall* and the *Moore* opinions did not create new substantive and retroactively applicable constitutional rights); *Smith v. Dunn*, 2:13-CV-00557-RDP, 2017 WL 3116937, at *5 (N.D. Ala. July 21, 2017) (*Moore* "dealt with the 'procedural requirement[s]' associated with . . . determination of a petitioner's disability."); *see also Williams v. Kelley*, 858 F.3d 464, 473-474 (8th Cir. 2017) (rejecting a claim that *Moore 1* announced a new rule of constitutional procedure that must be given retroactive effect); *Goodwin v. Steele*, 814 F.3d 901, 904 (8th Cir. 2014) (per curiam) (holding "*Hall* 'created a procedural requirement that those with IQ test scores within the test's standard of error would have the opportunity to otherwise show intellectual disability.' ") (*quoting In re*

47

5.     Bourgeois cannot show § 2255 is "inadequate or ineffective" and that should have access to § 2241.

The critical issue in this case is whether Bourgeois can pass through the "Savings Clause" under § 2255(e)[11] and proceed under § 2241.  *See Fulks,* 2010 WL 4600201, at *2.  Congress created § 2255(e) to serve as a safety hatch to "preserve and authorize access to the traditional habeas corpus relief under 28 U.S.C. § 2241 if the remedy available under § 2255 was 'inadequate or ineffective to test the legality of his detention." *Beason,* 926 F.3d at 935; *Shepherd v. Krueger,* 911 F.3d 861, 862 (7th Cir. 2018), *cert. denied,* 138 S. Ct. 1582 (2019).  As codified, § 2255(e) is not available to Bourgeois "if it appears that [he] has failed to apply for relief, by motion, to the court which sentenced him," or simply because "such court has denied him relief."  Bourgeois must show "that

---

*Henry*, 757 F.3d 1151, 1161 (11th Cir. 2014)); *Kilgore v. Sec'y, Fla. Dep't of Corr.*, 805 F.3d 1301, 1314 (11th Cir. 2015) (holding *Hall* not retroactive).

[11] 28 U.S.C. § 2255(e):

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

the *remedy* by motion be inadequate or ineffective to *test* the *legality* of his detention." *Id.* (emphasis added).

As such, the Seventh Circuit hold that pass through the saving clause and proceed under § 2241, there must be a structural problem with § 2255 that prevents an opportunity to address claims on collateral review. *See, e.g., Webster v Daniels,* 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc) (observing "there must be some kind of structural problem with section 2255 before section 2241 becomes available.") Whether the § 2255 remedy was inadequate or ineffective "depends on whether a proceeding under that section afforded the petitioner 'a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Beason,* 926 F.3d at 935 (quoting *In re Davenport,* 147 F.3d 605, 609 (7th Cir. 1998) (citing *Webster,* 784 F.3d at 1136, "as reinforcing *Davenport* as the law of the circuit.")).

Section 2255 is not inadequate or ineffective simply because Bourgeois may be barred from filing a second § 2255 motion, a point the Seventh Circuit has made abundantly clear. "To hold otherwise ... would be to nullify the limitations on successive petitions." *Garza v. Lappin,* 253 F.3d 918, 921 (7th Cir. 2001) (citing *In re Davenport,* 147 F.3d at

49

608). "The mere fact that Garza's petition would be barred as a successive petition under § 2255, however, is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing." *Id.*

Section 2255(e) focuses on procedure rather than outcomes. *Taylor,* 314 F.3d at 835. The Seventh Circuit in *Taylor* rejected the argument that whenever § 2255(h) closes the door to a renewed challenge under § 2255, the savings clause must open the door to a challenge under § 2241. *Id.* at 833-36. Taylor wanted to argue that the district court erred in denying his first § 2255 motion based on a new intervening Supreme Court decision. The intervening decision did not, however, create a new and retroactive rule of constitutional law: at most it showed the district court had erred in applying an old rule to his situation, an error insufficient to justify a second collateral attack. *Id.* at 836. The Seventh Circuit rejected Taylor's claim to proceed under § 2241, concluding that this would make § 2255(h) self-defeating. *See id.* Congress intended through the AEDPA to define limited circumstances

50

that permit successive collateral attacks; "[t]he escape hatch in [§ 2255(e)] must be applied in light of that history." *Id.*

> 6. To proceed under § 2241 requires a structural problem with § 2255 that forecloses even one round of effective collateral rule.

"A procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport,* 147 F.3d at 611. "[S]omething more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster,* 784 F.3d at 1136. To pass through § 2255(e) to § 2241 "requires a structural problem in § 2255 that forecloses even one round of effective collateral review, unrelated to the petitioner's own mistakes." *Camacho v. English,* 872 F.3d 811, 813 (7th Cir. 2017) (citing *Poe v. LaRiva,* 834 F.3d 770, 772 (7th Cir. 2016)) (quoting *Taylor,* 314 F.3d at 835)), *cert. denied,* 138 S. Ct. 1028 (2018). Bourgeois therefore "bears the burden of coming forward with evidence affirmatively showing the inadequacy or ineffectiveness of the § 2255 remedy" in the first

51

instance. *Smith v. Warden, FCC Coleman – Low,* 503 F. App'x 763, 765 (11th Cir. 2013) (citation omitted). He has not met that burden.

As *Fulks* held, the Seventh Circuit has found § 2255 "inadequate or ineffective" in only limited circumstances and infrequently has found the savings clause satisfied in circumstances beyond those articulated in *Davenport.* 2019 WL 4600210, at *3. In *Davenport* and *Webster,* the Seventh Circuit established narrow pathways through the savings clause to relief under § 2241. In both cases, the Seventh Circuit identified a structural problem in § 2255 that wholly foreclosed collateral review of a claim and justified permitting a federal prisoner to file a habeas petition under § 2241. *See Poe,* 834 F.3d at 773-74.

In *Davenport,* the Seventh Circuit held that Appellant Davenport could not meet the savings clause requirement because he could have raised his challenge during his direct appeal and initial § 2255 but choose not to. "Davenport thus could not meet the Savings Clause because [n]othing in 2255 made the remedy provided by that section inadequate to enable Davenport to test the legality of his imprisonment. He had an unobstructed procedural shot at getting his sentence vacated.'" *Fulks,* 2019 WL 4600210, at *3 (quoting *In re Davenport,* 147 F.3d at 609).

52

Section 2241 review was, however, appropriate for Appellant Nichols when the law of the circuit was so firmly against" his claim that it would have been futile to raise it at the time of his first petition, but the Supreme Court subsequently overruled the Seventh Circuit's interpretation of that relevant statue and made that ruling retroactive on collateral review.   Given the retroactive application of the decision overruling the prior rule, the Seventh Circuit concluded that § 2255 was "inadequate or ineffective" to test Nichols' claim that he was imprisoned for a non-existent crime.  *In re Davenport,* 147 F.3d at 610.  Section 2241 provided an appropriate vehicle because the defendant could not have raised his claim in an initial § 2255 motion and could not obtain permission to file a successive § 2255 motion because his claim did not rely on new evidence or a new rule of constitutional law.  *Id.* at 610.  In short, *Davenport* recognized a structural problem in the failure of § 2255(h) to permit a successive petition for new rules of statutory law made retroactive by the Supreme Court. *See Poe,* 834 F.3d at 773; *Light v. Caraway,* 761 F.3d 809, 812 (7th Cir. 2014) (holding § 2255 "is silent on how a prisoner can challenge his sentence based on a new and retroactive *statutory* decision") (emphasis in original); *Prevatte,* 300 F.3d

at 799-802 (holding Prevatte had not had an opportunity to obtain judicial correction of a potential defect in his conviction based on retroactive rules of statutory interpretation).

The Seventh Circuit followed *Davenport* in *Garza v. Lappin,* 253 F.3d at 918, holding that a § 2241 petition was properly cognizable via § 2255(e)'s savings clause and analyzed the unique facts and claim presented. As recently explained in *Fulks,* the Seventh Circuit reasoned that it was "literally impossible" for Garza to have raised his claim in his first proceeding:

> In *Garza*, after Garza's direct appeal and § 2255 proceedings were complete, the Inter-American Commission on Human Rights (the "Commission") determined that Garza's rights were violated during the penalty phase of his proceedings. *Garza,* 253 F.3d at 919. Garza sought to use this favorable decision to argue that he was entitled to habeas relief. *Id.* Looking to *Davenport*, the Seventh Circuit reasoned that because Garza could not meet either avenue set forth in § 2255(h) to file a second or successive § 2255 motion, and because it was "literally impossible" for Garza to have raised the Commission's favorable decision in his first § 2255 proceeding because the Commission had not yet issued its decision, § 2255 did not then nor had it ever "provided an adequate avenue for testing Garza's present challenge to the legality of his sentence." *Id.* at 922-23.

*Fulks,* 2019 WL 4600210, at *4.

In *Webster*, like *Davenport*, the Seventh Circuit determined that a structural problem existed that entirely foreclosed effective collateral review under § 2255. *See Poe*, 834 F.3d at 774. The Federal Defender in *Webster* filed an *Atkins* claim under § 2241, seeking to present evidence they discovered after Webster's initial § 2255 motion was denied; that evidence revealed that Webster had been diagnosed as mentally retarded a year before the commission of the crime for which he was sentenced to death. *Webster,* 784 F.3d at 1133-35. The Seventh Circuit determined Webster could not have used § 2255 at the time *Atkins* was decided because, despite due diligence, the new evidence was not available to him. Likewise, he could not file a successive § 2255 motion after discovering the new evidence because the Fifth Circuit required that the evidence show he could not be found guilty of the offense, rather than the penalty. *Id.* at 1134. Accordingly, the Seventh Circuit determined Webster's challenge to his sentence could not, "as a structural matter," be entertained by the use of a § 2255 motion and that he could therefore proceed under § 2241. *Webster,* 784 F.3d at 1139.

As the Seventh Circuit held in *Poe,* "the *Webster* court took great care to assure that its holding was narrow in scope." 834 F.3d at 777.

55

"There is nothing in *Webster* to suggest that its holding applies outside the context of new evidence." *Id.*

7. The Seventh Circuit's decisions do not permit Bourgeois to relitigate his *Atkins* claim under § 2241.

Bourgeois contends that cognizable claims under § 2241 "include those that rely on a new legal or factual basis not available at the time of the petitioner's trial proceedings or his § 2255 proceedings." (Bourgeois Petition, 2). While true in the abstract, Bourgeois cannot, however, marshal any authority for this proposition, which in its application expands the § 2255 saving clause beyond recognition.

Recognizing other circuits disagree, *see McCarthan v. Director,* 851 F.3d 1076 (11th Cir. 2017) (en banc), *cert. denied,* 138 S. Ct. 502 (2017); *Prost v. Anderson,* 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), the Seventh Circuit held in *Roundtree v. Krueger,* 910 F.3d 312 (7th Cir. 2018), "that § 2255 is 'inadequate or ineffective' when 'it cannot be used to address novel developments either statutory or constitutional law, whether those developments concern the conviction or the sentence." *Id.* at 313 (citing *In re Davenport,* 147 F.3d at 605; *Brown v. Caraway,* 719 F.3d 583 (7th Cir. 2013); *Webster,* 784 F.3d at 1123). But *Roundtree* qualified this, holding that "none of this circuit's decisions—and none in

56

the circuits that agree with *Davenport, Brown,* and *Webster*—permits relitigation under § 2241 of a contention that was actually resolved in a proceeding under § 2255, unless the law changed after the initial collateral review." 910 F.3d at 313. Stated differently in *Prevatte v. Merlak,* "the 'savings clause of § 2255 ... will permit a federal prisoner 'to seek habeas corpus *only* if he had *no reasonable opportunity* to obtain earlier judicial correction of a fundamental defect in his conviction or sentence *because the law changed after his first 2255 motion.*'" 865 F.3d 894, 897 (7th Cir. 2017) (emphasis added) (quoting *Montana v. Cross,* 829 F.3d 775, 783 (7th Cir. 2016) (quoting *In re Davenport,* 147 F.3d at 611)).

The Seventh Circuit reiterated in *Hill v. Werlinger* that "[i]nadequate or ineffective' means that 'a legal theory that could not have been presented under [Section] 2255 establishes the petitioner's actual innocence.'" 695 F.3d 644, 647-48 (7th Cir. 2012) (citing *Taylor*, 314 F.3d at 835); *In re Davenport,* 147 F.3d at 608. Accordingly, Bourgeois "must show that the legal theory he advances relies on a change in law that postdates his first § 2255 motion (for failure to raise a claim the first time around does not render § 2255 'inadequate') *and* 'eludes the permission in section 2255 for successive motions,'" *and*

57

"supports a non-frivolous claim of actual innocence." *Kramer,* 347 F.3d at 217 (emphasis added).

> 8.      The Seventh Circuit's *Davenport* standard does not allow Bourgeois' *Atkins* claim to proceed under § 2241.

The savings clause of § 2255(e) does not give Bourgeois a further bite at the post-conviction relief apple.  Instead, *Davenport* developed a three-part test to establish that § 2255 was inadequate:

> (1) that [Bourgeois] relies on not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive 2255 motion; (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is "grave enough ... to be deemed a miscarriage of justice corrigible thereof in a habeas proceeding," such as one resulting in "a conviction for a crime for which he was innocent."

*Beason,* 926 F.3d at 35 (quoting *Cross,* 829 F.3d at 783) (citation and quotation marks omitted). In *Taylor*, the Seventh Circuit made explicit what *Davenport* strongly implied:  "[A] claim of error in addressing the sort of constitutional theory that has long been appropriate for collateral review does not render § 2255 'inadequate or ineffective.' ... Every court that has addressed the matter has held that § 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review—and then only when as in *Davenport*

the claim being foreclosed is one of actual innocence." 314 F.3d at 835; *Kramer,* 347 F.3d at 217 ("We have explained that § 2255 is 'inadequate' when its provisions limiting multiple § 2255 motions prevent a prisoner from obtaining review of a legal theory that 'establishes the petitioner's actual innocence.'") (citing *Taylor* 314 F.3d at 835).

As stated, nothing in *Webster* suggests that its holding applies outside the context of new evidence. *Poe,* 834 F.3d at 774. Arguments that would have abused the writ of habeas corpus before the 1996 AEDPA cannot be raised after the amendments.

To meet the first prong of the *Davenport* test, Bourgeois "must show that he relies on a 'statutory-interpretation case,' rather than a 'constitutional case.'" *Brown,* 719 F.3d at 586. The Supreme Court in *Atkins* held that the Eighth Amendment forbids execution of an individual who has an intellectual disability. 536 U.S. at 321; *Hall,* 572 U.S. at 704. Unquestionably *Atkins* and its progeny, *Hall, Moore I,* and *Moore II,* are all grounded in the Eighth Amendment and are not statutory interpretation cases. "Simply put, [Bourgeois] asks 'th[is] court to set aside his sentence' as violative of the Eighth Amendment," a claim falling squarely within § 2255(a). *Fulks,* 2019 WL 4600210, at * 9.

59

Moreover, *Davenport* precludes the use of § 2241 for claims based on a constitutional case. *Poe,* 834 F.3d at 773 ("*Poe* contends that [*Brown v.*] *Caraway* misreads *Davenport,* asserting that *Davenport* does not actually preclude use of § 2241 for a constitutional case. This contention is meritless."); *Fulks,* 2019 WL 4600210, at *10 ("Constitutional claims, unlike statutory claims, do not reveal 'some kind of structural problem with § 2255' that forecloses a single round of judicial review.") (quoting *Webster,* 784 F.3d at 1136).[12]  A claim based on a new constitutional rule does not fall within the savings clause because § 2255(h) already provides a remedy where such a claim arises after a direct appeal and first § 2255 motion. *Poe*, 834 F.3d at 773; 28 U.S.C. § 2255 (h)(2)).  The savings clause therefore allows a claim to proceed under § 2241 only when it is based on a new rule of statutory law. *Fulks*, 2019 WL 4600210, at *10 ("Fulks cannot meet this factor, as he relies on *Hall* and *Moore* (which applies *Atkins* and *Madison (*which applies *Ford*).  All of these cases involve Eighth Amendment claims, not statutory ones.").

---

[12] As this District observed in *Fulks, Hall*—on which *Moore I* is based—was decided before *Webster.* If reliance on *Hall* was all that was required to meet the savings clause, the Seventh Circuit could have said so, but it did not. *Fulks,* 2019 WL 4600210, at *11.  "It cannot be," as Bourgeois contends, "that one need only invoke [*Moore I* and *Moore II*] to proceed under § 2241." *Id.*

Nor does Bourgeois meet *Davenport*'s second prong, which requires that his claim rely on a "new rule [that] applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding." *Beason,* 926 F.3d at 35. First, *Atkins* was decided at the time Bourgeois was convicted, and Bourgeois made his *Atkins* claim at his first § 2255 proceeding. Second, *Moore* did not establish a new rule or break any new ground beyond *Atkins'* holding that "[c]linical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive skills" and that State standards conform to clinical definitions of intellectual disability. 536 U.S. at 318; *see Hall,* 572 U.S. at 719-20. The Supreme Court reaffirmed in *Hall* and *Moore* that borderline intellectual testing cases require consideration of the adaptive functioning criteria, *Atkins'* second criteria. *Moore II,* 139 S. Ct. at 668 (citing *Moore I,* 581 U.S. at ---, 137 S. Ct. at 1048-50). Third, the Supreme Court did not and has not declared *Moore* as a new rule applied retroactively to AEDPA cases. *See Shoop v. Hill,* 139 S. Ct. 504, 507-08 (2019) (holding that, under AEDPA, the Supreme Court's opinion in *Moore I* was not clearly established federal law when an Ohio state court rejected Hill's *Atkins* claim in 2009); *see*

61

*Cain v. Chappell,* 870 F.3d 1003, 1024 n.9 (9th Cir. 2017) ("*Moore* itself cannot serve as 'clearly established' law at the time the state court decided Cain's claim."), *cert. denied,* 139 S. Ct. 455 (2018).

Bourgeois claims that he raises a new *Atkins* claim that was previously unavailable at the time of his first § 2255 motion because *Moore I* and *Moore II* establish new "legal and factual bases." *Moore I* and *Moore II* were derived directly from *Atkins*; the Supreme Court merely "expounded on the definition of intellectual disability" in *Hall* and *Moore. Hill,* 139 S. Ct. at 507. *"Moore* cannot apply retroactively." *In re Bowles,* 935 F.3d 1210, 1220 (11th Cir. 2019), *application for stay of execution and petition for writ of habeas corpus denied,* No. 1956-82, 2019 WL 3976202 (Aug. 22, 2019). In *Atkins,* the Supreme Court "declared 'a rule of general application ... designed for the specific purpose of evaluating a myriad of factual contexts.'" *Smith v. Sharp,* 935 F.3d 1064, 1084-85 (10th Cir. 2019) (quoting *Chaidez v. United States,* 568 U.S. [342,] 348 [(2013)]." "The application of this general rule to *Hall,* [ ] *Moore I* [ ], and *Moore II* cannot be understood to 'yield[ ] a result so novel that it forges a new rule, one not dictated by precedent', [given] the Court's proclamation in *Hall* that '*Atkins* ... provide[s] substantial guidance on

62

the definition of intellectual disability.'" *Smith,* 935 F.3d at 1084 (internal citation omitted).

Bourgeois may not proceed under § 2241 by filing a previously adjudicated *Atkins* claim under the guise of purportedly "new legal bases" forged by *Moore I* and *Moore II* and "new factual bases" from published updates to AAIDD-11 (11th ed. 2010) in AAIDD-2012 and AAIDD-2015, and to DSM-5.[13] *See In re Jones,* 830 F.3d at 1297. Again, while Bourgeois asserts *Moore I* and *Moore II* as new legal bases for his intellectual disability claim, the Supreme Court merely "expounded on the definition of intellectual disability" in *Hall* and *Moore. Hill,* 139 S. Ct. at 507; *see Atkins*, 536 U.S. at 308 n.3; *Hall,* 572 U.S. at 710; *Moore I,* 137 S. Ct. at 1045; *Moore II,* 149 at 668. Bourgeois does not rely on a new rule that could not have been invoked in his first § 2255 motion.[14]

---

[13] The "American Association on Intellectual and Developmental Disabilities," AAIDD, published the 11th edition of its diagnostic manual, "Intellectual Disability: Definition, Classification, and Supports," in 2010. The American Psychiatric Association published DSM-5, "Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition," on May 18, 2013.

[14] Should the Supreme Court declare *Hall* and *Moore* to announce new, retroactive rules of constitutional law, Bourgeois could raise his claim in a second and subsequent motion under § 2255. See 28 U.S.C. § 2255(h)(2). In the absence of such declaration by the Supreme Court, the Fifth Circuit denied Bourgeois' request for a successive § 2255 motion based on § 2244(b)(1) and not § 2255(b)(2). *Bourgeois,* 902 F.3d at 447-48.

Simply because Bourgeois may be barred from filing a second § 2255(a) motion does not render § 2255 inadequate or ineffective to test the fundamental legality of his sentence. "'To hold otherwise ... would be to nullify the limitations on successive petitions." *Garza,* 253 F.3d at 921; *In re Davenport,* 147 F.3d at 608 (rejecting the argument that "when the new limitations [on second or successive motions] prevent the prisoner from obtaining relief under 2255, his remedy under that section is inadequate and he may turn to 2241," with this explanation). Section 2255 provides a remedy for new retroactive constitutional rules; as such, those types of cases do not and would not fall under § 2255(e)'s savings clause. *See Fulks,* 2019 WL 4600210, at *8-17.

9.    The *Webster* standard does not allow Bourgeois' *Atkins* claim to proceed under § 2241.

In *Webster,* Seventh Circuit announced a three-part test for determining whether a claim of newly discovered evidence can satisfy the savings clause: "First, the evidence sought to be presented must have existed at the time of the original proceedings." 784 F.3d at 1140 n.9. "Second, the evidence must have been unavailable at the time of trial despite diligent efforts to obtain it. Third, and most importantly, the

evidence must show that the petitioner is constitutionally ineligible for the penalty he received." *Id.*

Bourgeois does not meet *Webster*'s three-part test. Bourgeois' claim of "new factual bases" is based on new AAIDD and APA diagnostic standards, not newly discovered, previously existing evidence that his counsel did not uncover before trial despite diligent efforts. "These updated standards are not newly *discovered* evidence that [Bourgeois] specifically is intellectually disabled." *Fulks,* 2019 WL 4600210, at *13. "[T]hey are instead newly *created* standards used to assess whether anyone is intellectually disabled[,]" not newly discovered evidence that existed before Bourgeois' trial or at the time of his first § 2255 proceeding. *Id.* Second, *Webster* requires that the newly discovered evidence must have existed, but been unavailable, at the time of the original proceedings. *Webster,* 784 F.3d at 1140 n.9. The AAIDD 11th Edition was published in 2010 and consulted by Judge Jack in the § 2255 order rejecting Bourgeois' *Atkins* claim. *Bourgeois,* 2011 WL 1930684, at *22-23 n.27. The 2012 and 2015 updates to AAIDD 11th Edition and the DSM-5 manual (published on May 18, 2013) were not created until after Bourgeois' 2007-2011 § 2255(a) proceeding. *Fulks,* 2011 WL 1930684, at

65

*13.  Assuming these publications could constitute newly discovered evidence—and they do not—, the Seventh Circuit made clear in *Webster* "that later developed evidence is insufficient" because otherwise there would never be any finality.  *Fulks,* 2011 WL 1930684, at *14 (*commenting on Webster,* 784 F.3d at 1140).  To accept Bourgeois' approach would permit him to "refile his claims with each revision of the medical standards governing the diagnosis of intellectual disability" forever forestalling a final decision in this case, precisely the tactic rejected in *Fulks.*  2011 WL 1930684, at *14.

10.  <u>Bourgeois' § 2241 motion is an abuse of the writ and premised on a theory at odds with *Teague.*</u>

Bourgeois does not claim that his sentence violated *Atkins* at the time it was imposed. (Petition, p. 72 ¶156).  He agrees that he fully adjudicated his *Atkins* claim at his first § 2255 proceeding.  He claims instead that he is intellectually disabled under current diagnostic standards and precluding him from raising his "revised" *Atkins* claim leads to an intolerable result—the execution of a categorically exempted individual.

As discussed above, Bourgeois does not present any new rule of law or newly discovered evidence that renders the remedy under § 2255

66

inadequate or ineffective test the fundamental legality of his death sentence. The Supreme Court has not declared *Moore* a new rule of constitutional law retroactively applied to AEDPA cases. And the development of new diagnostic standards does not constitute newly discovered evidence.

Based on Seventh Circuit precedent applied to the facts of this case, Bourgeois' *Atkins* claim, which failed under § 2255, cannot merit consideration or relief in this Court. Bourgeois' attempt to circumvent § 2255(h) amounts to an invitation to abuse the writ under pre-AEDPA law. *See Roundtree,* 910 F.3d at 313-14 ("An attempt to relitigate a theory, in the absence of an intervening change of law, was taken as a paradigm abuse of the writ.").[15] "[I]n addition to performing any analysis

---

[15] "Until 1996, when the Antiterrorism and Effective Death Penalty Act (AEDPA) amended § 2255, a petition could be filed in the sentencing court at any time—and multiple petitions could be filed, provided they did not abuse the writ. The 1996 Act added § 2255(f), which set a one-year time limit on petitions but also restarts the time if the Supreme Court changes the law with retroactive effect (§ 2255(f)(3)). The 1996 Act also added § 2255(h), which limits second or subsequent petitions. Neither of these changes affected Roundtree, who was able to use extra time under § 2255(f)(3) to file his initial § 2255 motion in Iowa. What he now wants is to use § 2241 in circumstances that would have been called an abuse of the writ before the 1996 Act replaced that common-law doctrine with § 2255(f) and (h). An attempt to relitigate a theory, in the absence of an intervening change of law, was taken as a paradigm abuse of the writ. See, e.g., *Salinger v. Loisel*, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924); *Wong Doo v. United States*, 265 U.S. 239, 44 S.Ct. 524,

67

required by AEDPA, a federal court considering a habeas petition must conduct a threshold *Teague* [*v. Lane,* 489 U.S. 288 (1989)] analysis when the issue is properly raised by the state." *Horn v. Banks,* 536 U.S. 266, 272 (2002); *Van Daalwyk v. United States,* 21 F.3d 179, 180 (7th Cir. 1994) (holding retroactively principles articulated in *Teague* apply to collateral challenges to federal convictions).

In any event, *Teague* bars Bourgeois' reliance on *Moore* to revitalize his *Atkins* claim. *Moore* did not announce a new rule that could apply retroactively under *Teague. Smith v. Ala. Dep't of Corr.*, 924 F.3d at 1337-39. In *Atkins,* the Supreme Court left the task of defining intellectual disability to individual states and legislatures. *Id.,* 536 at 317; *Smith,* 924 F.3d at 1337. In *Hall,* the Court clarified that state court's intellectual disability determination should be "informed by the medical community's diagnostic framework." 572 U.S. at 721. "This

---

68 L.Ed. 999 (1924); *Sanders v. United States*, 373 U.S. 1, 17–18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The 1996 changes were designed to curtail relitigation of collateral attacks, yet Roundtree wants something that would have been unavailable even before 1996.—That's not permissible. See *In re Page*, 179 F.3d 1024 (7th Cir. 1999), which says that arguments that would have abused the writ before 1996 also cannot be raised after the amendments.

*Roundtree,* 910 F.3d at 313-14.

meant . . . that courts must consider the standard error inherent in IQ tests," and that "defendants be allowed to present additional evidence of intellectual disability, including testimony on adaptive deficits." *Smith,* 924 F.3d at 1337 (citing *Hall,* 572 U.S. at 723; *Moore I,* 137 F.3d at 105). The Court expanded on *Hall* in *Moore,* "reiterating that state courts do not have 'unfettered discretion'" in assessing intellectual disability and "cannot disregard current clinical and medical standards." *Id.* at 1337 (citing *Moore I,* at 1050-51). In *Moore I,* the Court "clarified ... the focus of the adaptive functioning inquiry should be an individual's adaptive deficits—not adaptive strengths," *Moore I,* 137 U.S. at 1050–51, a point reemphasized in *Moore II,* 139 U.S. at 668-69.

"New constitutional rules are generally not retroactive for cases on federal habeas review." *Smith,* 924 F.3d 1337 (citing *Teague,* 489 U.S. at 288). "To determine whether a rule is retroactive, [this Court] first decide[s] if it is a new rule," that is, "breaks new ground or imposes a new obligation on the States or the Federal Government," or when "the result was not dictated by [prior] precedent." *Id.* (quoting *Teague,* 489 U.S. at 301). If the rule is indeed new, then the question is "whether it falls into one of *Teague*'s two exceptions to the general bar on retroactivity." (1)

"substantive rules of constitutional law that place an entire category of primary conduct beyond the reach of the criminal law, including 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense,'" *id.* (citing *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)), or (2) "'watershed rules of criminal procedure'" that are necessary to the fundamental fairness of criminal proceedings," *id.* (citing *Teague,* 489 U.S. at 311–12.

Bourgeois' claim does not fall under either of *Teague's* exceptions. To the extent he argues that *Moore* effectively expands the class of persons who are ineligible for execution by requiring consideration of the medical community's current clinical standards, this decision is procedural, not substantive:

> Substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose," while procedural rules "are designed to enhance the accuracy of a conviction or sentence by regulating the manner of determining the defendant's culpability." *Montgomery v. Louisiana*, --- U.S. ---, 136 S. Ct. 718, 729–30 [ ] (2016) (internal quotation marks omitted). . . .
>
> . . . While *Moore* may have the effect of expanding the class of people ineligible for the death penalty, it merely defined the appropriate manner for determining who belongs to that class of defendants ineligible for the death penalty. *Moore* thus announced a new rule, but it is procedural, not substantive."

924 F.3d at 139.

To fall within *Teague's* procedural exception, "a new rule must meet two requirements: Infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction [or sentence], and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" *Smith,* 924 F.3d at 1339 (quoting *Tyler*, 533 U.S. at 665). As the Eleventh Circuit holds, "[o]nly *Gideon v. Wainwright,* 372 U.S. 335 [ ] (1963), which extended the right to counsel to criminal defendants, has been declared the kind of procedural rule that altered the 'bedrock procedural elements' essential to the fairness of a proceeding." 924 F.3d at 1339-40 (listing Supreme Court cases rejecting retroactivity under *Teague's* second exception that do not have the "primacy" or "centrality" of *Gideon*). *Moore* provides guidance for complying with *Atkins,* but it "cannot [be said] that *Moore* altered the bedrock procedural elements essential to the fairness of a criminal proceeding in the way that the *Gideon* rule did." *Smith,* 924 F.3d at 1339-40. As such, Bourgeois cannot meet the requirements of *Teague's* second exception for *Moore* to be applied retroactively.

71

11.   Bourgeois cannot relitigate his *Atkins* claim under 28 U.S.C. § 2241 by making his 28 U.S.C. § 2255 remedy inadequate.

The relief Bourgeois requests is (i) a stay of execution pending a final disposition of his *Atkins* claim in district court, (ii) amendment of his claim if necessary, and (iii) an evidentiary hearing to be conducted on the merits of his *Atkins* claim. As discussed, though Bourgeois seeks to characterize his *Atkins* claim as new (or at least revised), in reality he seeks to relitigate his same 2010 *Atkins* claim in this § 2241 habeas petition. But Bourgeois does not allege or provide any newly discovered evidence related to his *Atkins* claim that was not already presented to and considered by the district court at his first § 2255 proceeding. In substance, what Bourgeois requests is that this Court re-evaluate and reweigh *all* of the evidence considered by the district court in determining on the merit that he is not *Atkins* intellectually-disabled and constitutionally exempt from execution.

Moreover, the Southern District of Texas judge's legal and factual *Atkins* determinations are not unreasonable merely because the Supreme Court, a circuit court, or this Court "would have reached a different conclusion in the first instance." *Brumfield v. Cain,* --- U.S. ---, 135 S. Ct.

72

2269, 2277 (2015). "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's ... determination." *Wood v. Allen,* 558 U.S. 290, 301 (2010) (quoting *Rice v. Collins,* 546 U.S. 333, 341-42 (2006) (internal marks omitted)).

This Court, like the Supreme Court on review of the State's factual determination in *Brumfield,* cannot second guess factual and legal findings and conclusions made by the district court, who presided over and considered all evidence at Bourgeois' capital murder trial and collateral proceedings, made veracity and credibility determinations based on expert and lay witness testimony, and determined Bourgeois' *Atkins* claim on the merits. *Bourgeois,* 2011 WL 1930684, at * 1-46. The district court afforded Bourgeois the opportunity to present evidence and argue his position without imposing any limitation. The court conducted a full-scale comprehensive week-long evidentiary hearing addressing his *Atkins* claim. The court "liberally allowed Bourgeois to develop the factual basis for his post-conviction claims, including through the presentation of testimony and evidence in several hearings." *See Bourgeois,* 2011 WL 1930684, at *1. This Court cannot second-guess the

73

decision of the United States District Court for the Southern District of Texas to believe one witness' testimony over another's, nor can it discount a witness's testimony that supports the court's *Atkins* factual findings and final intellectual disability determination.

This Court should also be reluctant to set aside factual findings that are based upon the district court's determination of the credibility of witnesses. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeal may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

Bourgeois, who is represented by the same Federal Defender who represented him on his first § 2255 motion in the Southern District of Texas, on appeal from the denial of § 2255 relief to the Fifth Circuit, and on petition for certiorari review, could have but did not appeal the district court's *Atkins* determination on any ground. Habeas is an extraordinary remedy. *Webster* holds that, as a rule, the remedy afforded by § 2255

74

largely replaced § 2241; that it "functions as an effective substitute for the writ of habeas corpus" and not an "in addition to." *Webster,* 784 F.3d at 1124. Bourgeois "cannot be permitted to lever his way into section 2241 by making his section 2255 remedy inadequate, here by failing to appeal from the denial of his section 2255 motion." *Morales v. Bezy,* 499 F.3d 668, 672 (7th Cir. 2007); *see Hernandez v. Fed. Corr. Inst.,* No. 08-C-499, 2008 WL 2397546, at *1 (E.D. Wis. June 10, 2008) ("Because he did not even litigate his § 2255 motion through the appellate stage, he is hard-pressed to suggest that the relief available under § 2255 was somehow inadequate."). Nothing prevented Bourgeois from challenging on appeal the district court's factual and legal determinations as an unreasonable application of *Atkins,* or from challenging the underlying factual evidence and credibility determinations supporting the court's findings as clear and convincing error. And neither *Hall* nor *Moore* can be understood to yield a result so novel that it Bourgeois could not have advanced his legal theories earlier on appeal from the district court's denial of his *Atkins* claim.

75

**B.   THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS APPLIED THE AAIDD'S AND APA'S DEFINITION OF INTELLECTUAL DISABILITY IN THE AAIDD 11TH EDITION AND DSM-IV-TR, THE DIAGNOSTIC GUIDES CURRENT AT THE TIME OF BOURGEOIS' § 2255 PROCEEDING.**

The Supreme Court in *Atkins* held that the Eighth Amendment forbids execution of an individual who has intellectual disability.  536 U.S. at 321.  *Atkins,* however, left the task of developing appropriate ways to enforce this constitutional restriction upon execution of sentences to the states.  536 U.S. at 317.  Twelve years later in *Hall,* the Supreme Court addressed "how intellectual disability must be defined in order to implement … the holding of *Atkins.*" *Hall,* 572 U.S. at 709. On specifics, the Court in *Hall* confirmed that "[t]he legal determination of intellectual disability is distinct from a medical diagnosis, but informed by the medical community's diagnostic framework"—that is, by analyzing the criteria set by *Atkins.  Hall,* 572 U.S. at 709-10; *Moore I,* 137 S. Ct. at 1039 (setting forth the same three criteria); *Fulks,* 2019 WL 4600210, at *6.  The Court in *Hall* held that Florida's rule restricting *Atkins* to defendant's with an "IQ test score of 70 or less" "violated the Eighth Amendment because it treated an IQ score higher than 70 as conclusively

76

disqualifying and thus prevented consideration of other evidence of intellectual disability, such as evidence of 'deficits in adaptive functioning over [the defendant's] lifetime." *Shoop,* 139 S. Ct. at 507 (quoting *Hall,* 572 U.S. at 704, 724).

Three years later in *Moore,* the Court applied *Hall,* again instructing that adjudications of intellectual disability should be "informed by views of medical experts," and that courts continue the inquiry and consider other evidence of intellectual disability where an individual's IQ score, adjusted for the test's standard error, falls within the clinically established range for intellectual-functioning deficits." *Moore I,* 137 S. Ct. at 1050. The Court made clear in *Moore I* that courts should not disregard the medical community's current standards in favor of applying a judicially-created standard based on outdated standards, as the Texas Court of Criminal Appeals did in Moore's case. *Moore I,* 137 S. Ct. at 1052-53; *see Fulks,* 2019 WL 4600210, at *6. In *Moore II,* as it did in *Hall* and *Moore I,* the Court directed courts to the AAIDD 11th edition and DSM-5 for consultation and guidance.

In line with *Atkins* and *Hall,* the United States District Court for the Southern District of Texas properly concluded in Bourgeois' § 2255

77

litigation that *Atkins* "did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation will be so impaired as to fall within the *Atkins* compass." *Bourgeois*, 2011 WL 1930684, at *23 (citing *Bobby v. Bies,* 556 U.S. 825, 830 (2009)); *Hall,* 572 U.S. at 718; *Fulks,* 2019 WL 4600210, at *6 ("*Atkins* largely left to the [sovereign] the job of developing criteria to determine' which prisoners have an intellectual disability and thus cannot receive a death penalty.") (citing *McManus v. Neal,* 779 F.3d 634, 650 (7th Cir. 2015)). Observing a "welter of uncertainty follow[ed] *Atkins,*" the district court confirmed what the Supreme Court held in *Atkins* and later made more certain in *Moore*: the "psychological profession generally agrees as to what standards govern a diagnosis of mental retardation." *Bourgeois*, 2011 WL 1930684, at *23, 24 n.29.

The district court correctly held that *Atkins* did not delegate to the psychologists the determination of whether an inmate was categorically exempt from execution, but left "the contours of the constitutional protection to the courts." *Id.* at * 24. Conforming with the Supreme Court's later decisions in *Hall* and *Moore,* the district court consulted, relied on, and adhered to the AAIDD and APA's clinical definition of

intellectual disability/mental retardation contained in AAIDD-11 (2010) and DSM-IV-TR (2000) in making its *Atkins* determination on Bourgeois' intellectual-disability claim.  The court recognized that the AAIDD and APA provided equally valid definitions of intellectual disability/mental retardation shown by *Atkins* and then confirmed by *Hall* and *Moore*.  *Id*. The two leading medical experts who testified at the § 2255 hearing on Bourgeois' intellectual-disability claim did not describe any meaningful distinction between the various editions as to the substance of what constitutes mental retardation/intellectual disability. Dr. Swanson, Bourgeois' expert, relied on the AAIDD-11 definition. *Id*. at *23 n.27.  Dr. Price, the government's expert, relied on the DSM-IV definitions; he explained the AAIDD-11 is "a restatement of the same thing' without 'significant differences.'" *Id*.  Judge Jack "refer[red] to the 11th edition when referring to the evidence in this case." *Id*.  She used the term "mental retardation" throughout her opinion because the APA had not yet adopted the term "intellectual disability." *Id*. at 23 n.27, 24 n.28.

Whether through prescience or thorough research of substantive *Atkins* and/or *Atkins*-related procedural issues developing in federal and state courts at that time, the district court analyzed intellectual

disability under *Atkins* according to the APA's definition of intellectual functioning deficits in the DSM-5, prior to the Supreme Court's decisions in *Hall* and *Moore I.* The first *Atkins* criteria of intellectual disability defined by the medical community is *"significantly* subaverage intellectual functioning." *Fulks,* 2019 WL 4600210, at *6 (citing *Hall,* 572 U.S. at 710). Justice Alito explained in his dissent in *Hall* that the intellectual functioning and adaptive deficits prong of *Atkins* "are meant to show distinct components of intellectual disability": "intellectual functions" include "reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience." *Hall,* 572 U.S. at 737 (J. Alito dissenting, with the Chief Justice, J. Scalia, and J. Thomas concurring) (citing to DSM-5, at 33) ("Deficits in intellectual functions, such as reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience, confirmed by both clinical assessment and individualized, standard testing.") The district court comprehensively analyzed and evaluated that criteria as defined by the medical community. *Bourgeois,* 2011 WL 1930684, at *25-31.

The district court found the medical experts scored Bourgeois' Full Scale IQ range at 70 to 75, the presumptive range accepted by the medical community as a qualifying score for a diagnosis of mental retardation. The court accepted testimony that Bourgeois' base IQ could be five points higher or lower using the medical community's standard error of measurement. *Id.* at 25 & n.31-34. The court did *not* interpret *Atkins* more narrowly than the Supreme Court intended by holding that an individual with a test score above 70 to 75, including a score within the margin of error, does not have an intellectual disability and is barred from presenting other evidence that would show his faculties are limited. *Bourgeois,* 2011 WL 1930684, at 26. Instead, the court expressly observed that *Atkins* did not establish a cut-off score that exempts a person from execution or categorically qualifies him for execution. *Id.* at *26 ("Federal law does not require a court to find [an inmate] to be mentally retarded because the low end of [his] confidence level was below 70, just as it would not be required to find that [he] could be executed on the basis that the high end of this band fell above 70.") (internal citation and marks omitted); *see Hall,* 572 U.S. at 717-18.

81

Bourgeois' claim that the district court violated *Moore I* and current diagnostic standards because it refused to apply the "Flynn Effect" is incorrect. (Petition, p. 60 ¶134).  The court expressly cited the AAIDD 11th edition as informing that "'best practices require *recognition* of a potential Flynn Effect when older editions of intelligence tests (with corresponding older norms) are used in the assessment of an IQ score." *Bourgeois*, 2011 WL 1930684, at *26 n.37 (emphasis in original) (citing AAIDD 11th, at 37).  The court found, based on Dr. Swanson's and Dr. Moore's testimony, that the evidence in Bourgeois' case did not show "a consensus among psychologists that would require the adoption of the Flynn Effect as a legal method to lower an inmate's Full Scale IQ score." *Id.*   Dr. Swanson, Bourgeois' expert, agreed the "Flynn Effect" was primarily a term used in the courtroom. *Id.*  Dr. Swanson testified the Flynn Effect would place Bourgeois' IQ score to a "'true score ... somewhere between 68 and 70," but qualified that the Flynn Effect was "not relevant" because Bourgeois' scores satisfied *Atkins* in and of themselves. *Id.*

The district court correctly determined that whether Bourgeois had significantly subaverage intellectual functioning is a question of fact that

82

the district court decides. *Bourgeois*, 2011 WL 1930684, at *26. Bourgeois' attorneys in fact conceded the district court must look at the IQ scores "but then reach its own determination of whether he has significantly subaverage intelligence." *Id.* Contrary to Bourgeois' present claim, the district court did not disregard Bourgeois' Full Scale IQ test scores, rely on various unscientific stereotypes, or rely on its own "armchair assessment" in applying *Atkins*.

Instead, the court credited Dr. Price and Dr. Moore's assessment of Bourgeois' intellectual functions based on IQ scores evaluated in conjunction with considerations listed in the DSM-5: "reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience, confirmed by both clinical assessment and individualized, standard testing." DSM-5, p. 33. Dr. Price testified that he did not trust that the IQ testing adequately measured Bourgeois' "true level" of intellectual functioning based on a variety of factors that may compromise the validity of his test scores and/or caused the testing to underestimate his intellectual level—such as Bourgeois' poor testing performance, idiosyncratic abilities, lackluster effort and carelessness in testing, cultural deprivation, and others. *Id.* at 27-29. Dr. Price testified

it was "'very unusual' that the results of Bourgeois' academic achievement scores administered by Bourgeois' experts (Dr. Gelbort, Dr. Weiner, and Dr. Swanson) showed high-school age proficiency higher than his IQ scores." *Id.* at 29.

Importantly, Dr. Price concluded, based on his clinical assessment, individualized testing, and review of the expert medical reports, that Bourgeois' "cognitive abilities exceeded his measured cognitive intelligence." *Id.* at 27. The district court credited Dr. Price's and Dr. Moore's judgment based on the evidence viewed in proper context. For instance, Dr. Price and Dr. Moore found that Bourgeois was able "to concentrate for a length of time," *id.*; "to read and understand and conceptualize some of the things that he was able to talk about," *id;* write in a very detailed and communicative manner, expressing himself in complete thoughts ("his sentence structure, his syntax ... he can communicate when he writes;" he "can express himself in complete thoughts, and very detailed complete thoughts"; his "vocabulary is good," his "ideas are complex[,] the sentences are often compound, [h]e's able to follow a flow of thoughts, communicated his ideas effectively," he's

84

"certainly seems to be a vigilant record keeper, well aware of dates and perhaps locations.") *Id.*

Dr. Price further assessed that Bourgeois "had graduated from high school [a childhood friend told Dr. Moore that he had attended college classes], had worked for years as an over-land trucker, bought a house, managed his own finances, wrote intricate and detailed letters, communicated without difficulty, participated actively in his own defense, and otherwise carried himself without any signs of intellectual impairment." *Id.* at 29. Referring directly to AAIDD-11 in conjunction with Dr. Price's and Dr. Moore's assessment of Bourgeois' intellectual functioning, the court rejected Bourgeois' experts' conclusion that he only performed his job with a system of supports in place. *Id.* & n.44. "Dr. Price credibly explained that 'it's highly inconsistent for him to have had a job as a cross-country truck driver and perform as he did, just totally inconsistent with mental retardation.'" *Id.* at 29.

Dr. Price's and Dr. Moore's clinical assessment, individualized testing, and professional judgment was that: "Bourgeois' writings show an ability to observe the world around him, process relevant information, form strategy, and communicate his thoughts to others. His letter

85

exceeds the complexity and sophistication of someone operating at a grade-school level. Bourgeois' own writings discount the possibility that he is mentally retarded."[16]   *Id.* at *30.  The district court's findings regarding Bourgeois' personal interaction with the bench were not just "lay assessments" Bourgeois' "true" intellectual abilities, as the defendant now suggests. The findings gave credence to Dr. Price's and Dr. Moore's "clinical judgment" that Bourgeois was not significantly subaverage in intellectual functioning based on their professional and individualized standard assessment testing and interviews.  *Id.* at *30-31.  The court rejected as incredible Dr. Swanson's assessment that Bourgeois "functions in about the 'lowest two percent of the population'" (i.e., "operates as a child") in view of conflicting evidence and competing

---

[16] The district court gave representative examples of Bourgeois' personal writings to his attorneys early in this case:

> I, Alfred Bourgeois, have every intention of winning my case.  I have been falsely arrested, and please take your time and read this letter real well.  This will explain how we can win this case in the death of my child, [JG1999]." (DE 598 at 148).  In another letter he asked: Dear Mr. Gilmore, I want a copy of your strategy on my case. I want to know how you plan to attack my case and what you think the outcome will be.  I would appreciate if you could put together a brief memorandum in support of me, Alfred Bourgeois, your Defendant, and position regarding my trial." (DE 598 at 151).

*Bourgeois*, 2011 WL 1930684, at *30 n.45.

clinical judgments made by the other experts. *Bourgeois,* 2011 WL 1930684, at *30-31. Moreover, the district court's observations that Bourgeois actively participated in his defense and understood the proceedings, intelligently assessed the circumstances he faced and formulated strategy,[17] *is relevant* as supported by factual evidence. *Compare Moore II,* 139 S. Ct. at 671 ("[T]he [CCA] emphasized Moore's capacity to communicate, read, and write based in part on *pro se* papers Moore filed in the court. [T]*hat evidence is relevant,* but it lacks convincing strength without a determination about whether Moore wrote the papers on his own...") (emphasis added).

In making the *Atkins* determination the district court did precisely the two things that *Hall* and *Moore* direct: afforded Bourgeois the opportunity to present his evidence and argument on *Atkins'* three-part

---

[17] "During trial, Bourgeois communicated with the Court on several occasions. The Court viewed his testimony before the jury in both phases of trial. The Court had sufficient interaction with Bourgeois to make a lay assessment of whether he functions at the low level described by his expert witnesses. Bourgeois never gave the Court any impression that he functioned at an intellectual level equal to that of a child. He completely understood the proceedings against him, intelligently assessed the circumstances he faced, actively participated in his defense, formulated strategy, intelligently communicated his versions of events, cogently answered questions put to him, and otherwise appeared to have an adequate level of intelligence. Based on this Court's own observations, the testimony that Bourgeois has significant intellectual limitations is not credible or persuasive." *Bourgeois,* 2011 WL 1930684, at *30.

87

criterion without limitation. And, after finding that Bourgeois' IQ test score fell within a presumptive range accepted by the medical community as a qualifying score for a diagnosis of mental retardation (but that a fuller view of his abilities does not correspond to a finding of significant intellectual limitations), the court continued its inquiry into *Atkins'* adaptive deficits criteria. *Bourgeois,* 2011 WL 1930684, at *31.

Moreover, the district court did not rely on judicially-created *Briseno*[18] factors that formed the basis of the error explored in Moore *I* and *Moore II.* Nor did it employ any facsimile of the *Briseno*-test applied by the CCA in *Moore.* As it did with *Atkins'* intellectual functioning criteria, it scrupulously applied the AAIDD's and APA's definition of intellectual disability in the AAIDD-11 and DSM-IV-TR editions to *Atkins'* second criteria: adaptive deficits, "the inability to learn basic skills and adjust behavior to changing circumstances," *Hall,* 572 U.S. at 710, "assessed using both clinical and individualized ... measures," *Moore II,* 139 S. Ct. at 668; *see Bourgeois,* 2011 WL 1930684, at *31 & n.48. [19]

---

[18] *Ex Parte Briseno,* 135 S.W.3d 1 (Tex. Crim. App. 2004).

[19] *See Bourgeois,* 2011 WL 1930684, at *31 & n.48:

> "The AAIDD and APA definitions for mental retardation both break the adaptive-limitations inquiry into subcategories of deficiencies. The

88

The record does not support Bourgeois' global claim that the district court counteracted his adaptive deficits by overemphasizing adaptive strengths and unscientific stereotypes of intellectually disabled individuals. The court carefully examined the experts' clinical reports pertaining to Bourgeois' adaptive skills and adaptive deficits within the medical community's diagnostic framework. The Court determined Dr. Swanson and Dr. Moore came to diametrically opposed conclusions about Bourgeois' adaptive skills. *Id.* at \*33. The court credited Dr. Moore's assessment and judgment that Bourgeois did not qualify as mentally

AAIDD evaluates "significant limitations ... in adaptive behavior as expressed in conceptual, social, and practical adaptive skills." AAMR 11th at 1.[48] The APA looks for 'significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.' DSM–IV–TR at 41. While collapsing the adaptive deficits into distinct subgroups, the APA and AAIDD approaches apparently capture the same range of functional aptitude."

[48]The AAIDD 11th gives examples of multidimensional representative skills within the three categories: (1) conceptual skills involve "language; reading and writing; and money, time, and number concepts"; (2) social skills mean "interpersonal skills, social responsibility, self-esteem, gullibility, naivete (i.e., wariness), follows rules/obeys laws, avoid being victimized, and social problem solving"; and (3) practical skills include "activities of daily living (personal care), occupational skills, use of money, safety, health care, travel/transportation, schedules/routines, and use of the telephone." AAIDD 11th at 44.

retarded within the diagnostic framework. The court reasonably viewed the inquiry as requiring it to probe more deeply "into the accuracy of reported deficiencies" and verify the reliability of data underlying the experts' findings of adaptive deficits. *Id.* at \*33. In this regard, the court conducted a *very* extensive and comprehensive review of both doctor's reports and testimony, and examined the veracity and reliability of clinical data underlying them. *Id.* at \*33-44; *see id.* at \*33-37 ("Assessment by Testing Instruments"), \*37-39 ("Lay Accounts of Bourgeois' Functioning"), \*40-44 ("Bourgeois' Adaptive Abilities"), \*44-46 "Manifestations of Limitation Before Age 18"). The court referred two focal points in the AAIDD 11th when assessing the credibility and reliability of Dr. Swanson's and Dr. Moore's adaptive skill reports: that the AAIDD "adopts an underlying 'assumption' in the definition of mental retardation that 'within an individual, limitations often coexist with strengths," *id.* at \*32 (citing AAIDD 11th at 1), and, to that end, the AAIDD instructs "for clinicians to assess the reliability of any respondent providing adaptive behavior information," *id.* at \*34 (citing AAIDD 11th at \*47).

90

The court did not find that Bourgeois perceived adaptive strengths counteracted the evidence of his adaptive deficits, as Bourgeois argues in his habeas petition.  The court critically analyzed the diametrically opposed conclusions by the medical experts, assessed the credibility and accuracy of their assessments and reports based on the evidence, and examined the veracity of the evidence underlying their professional judgment.  In that context, the court found the "record show[ed] strengths that more than coexist with weaknesses, they call into question the depth and accuracy of reports of those weaknesses." *Id.* at *44.  The court found that Dr. Swanson for failed to assess the validity and credibility of lay witnesses, *id.* *40, and rejected her clinical assessment based on failure "to make a full review of available evidence relating to Bourgeois' adaptive abilities," *id.,* at *44.   The court considered Dr. Swanson's failure to administer Vineland/ ABAS-II testing to multiple respondents and basing her assessments on someone who had observed Bourgeois for only a short period of time at the age of 7, and not when he was closer to age 18, and who gave conflicting test answers. Dr. Moore ascertained that the conflicting answers Ms. Franks gave undermined the reliability of her testing.  *Id.* at *35-36.

The court credited Dr. Moore's administering the test to multiple respondents who observed Bourgeois closer to age 18 and older, verifying the accuracy of the supporting data, discounting questionable testing, and basing his assessment only on verified testing. The court found that this "more credibly measured Bourgeois' functioning." *Id.* at *35-37. The court credited Dr. Moore's testimony, "while [Bourgeois]' functioning may have been relatively impaired in his early childhood, he appears to have developed greater independence of functioning by the time he finished high school." *Id.* at *44. The court found that "[n]one of the responses in Dr. Moore's testing suggested a significant impairment." *Id.* at *37.

Consistent with AAIDD guides, the court reasonably assessed and weighed the reliability of competing lay testimony. For example, defense witnesses testified that Bourgeois, could not tie his shoes or button his clothes as a child, had trouble learning to drive a truck, and had accidents. Government sponsored witnesses testified that Bourgeois had a "very professional appearance," was a competent to above-average truck driver, and navigated throughout the country without difficulty. *Id.* at *37-39. Accordingly, the court found that Bourgeois' academic

92

test score, his meticulous financial tracking, his fastidious record keeping, his cogent letter writing, and his competent spelling did not persuasively reflect adaptive deficits. *Id.* at 41-44. Bourgeois' employment as a commercial truck driver, entailing cross-country routes, for decades without accident, was inconsistent with mental retardation. *Id.* at *41-44.

Based on Dr. Price's and Dr. Moore's testimony, diagnostic assessment, and professional judgment, the court reasonably found the evidence "failed to point to any pronounced intellectual impairment before Bourgeois' eighteenth birthday;" that "Bourgeois has not shown that he is now, was at the time of the crime, or was during the developmental period, mentally retarded." *Id.* at *44. Based on the evidence presented, Bourgeois did not make "a convincing showing that he suffers from significant adaptive deficits that would serve as a predicate for mental retardation." *Id.*

## III.

## UNITED STATES' OPPOSITION TO MOTION FOR STAY OF EXECUTION

Bourgeois' execution is scheduled for January 13, 2020. Bourgeois moves to stay his execution pending this Court's final disposition of his

*Atkins* claim. The uncontroverted facts are that Bourgeois adjudicated his *Atkins* claim in his first § 2255 proceeding and the district court denied his claim on the merits. *United States v Alfred Bourgeois,* No. 2:02-cr-216, No. 2:07-cv-223, 2011 WL 1930684, *1 (S.D.Tex. May 19, 2011), *COA denied,* No. 11-70024, 537 F. App'x 604 (5th Cir. Aug. 5, 2013), *cert. denied,* 135 S. Ct. 46 (2014). The decision of the Southern District of Texas is final under 28 U.S.C. § 2244(a), (b)(1), and (b)(2). As briefed, on the facts of this case 28 U.S.C. § 2241 does not provide Bourgeois a viable avenue for habeas relief in the Southern District of Indiana on the successive *Atkins* claim that he raises in this habeas petition.

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Bourgeois does not demonstrate a significant possibility of success on the merits of his *Atkins* claim. The Supreme Court has not declared *Moore I* and *Moore II* a new rule retroactively applicable under the AEDPA, and he does not meet the statutory requirements under 28 U.S.C. § 2255(e)

94

to proceed under 28 U.S.C. § 2241.  Bourgeois does not meet the Seventh Circuit's tests under *Davenport* and *Webster* to proceed under § 2241 in this habeas petition.  Nor does his claim fall within any *Teague* exception for purposes of § 2241.  There is no reasonable probability that four Justices will consider his *Atkins* claim sufficiently meritorious to grant certiorari.  This is not a close case that the equities favor the granting of relief.  As stated, Bourgeois was afforded full adjudication of the merits of his *Atkins* claim at his first § 2255(a) proceeding, and the order of the United States District Court for the Southern District of Texas denying Bourgeois habeas relief is final.

The United States has a strong interest in enforcing Bourgeois' death sentence imposed by the jury on March 25, 2004, for the savage and horrific premediated murder of his two-year old daughter.  Bourgeois does not claim that his sentence violated *Atkins* at the time the jury unanimously imposed it, Dkt. 1, p. 71 ¶156; he does not fall within a class of persons the Eighth Amendment categorically exempts from execution.  "Equity must take into consideration the [United] States' strong interest in proceeding with its judgment."  *Gomez v. U.S. Dist. Court for N. Dist. of California*, 503 U.S. 653, 654 (1992).  The public interest mandates

95

that Bourgeois' scheduled execution on January 13, 2020, be enforced by the United States.  This Court should deny Bourgeois' motion for stay of execution on grounds that there is no public interest or constitutional basis to grant it.

## CONCLUSION

For the foregoing reasons, Bourgeois' petition for writ of habeas corpus and motion to stay execution should be denied with prejudice.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:  s/ Paula C. Offenhauser
PAULA C. OFFENHAUSER
Special Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9102
E-mail:  Paula.Offenhauser@usdog.gov

By:  s/ Brian Reitz
BRIAN REITZ
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
E-mail:  Brian.Reitz@usdoj.gov

*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I certify that on October 18, 2019, a copy of the foregoing Return to Order to Show Cause was filed electronically.  Notice of this will be sentence to the following parties by operation of the Court's electronic filing system:

Victor J. Abreu
Federal Community Defender Office
For the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Victor_Abreu@fd.org

Katherine Thompson
Federal Community Defender Office
For the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Katherine_Thomson@fd.org

Peter Williams
Federal Community Defender Office
For the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Pete_Williams@fd.or

By:  s/ Paula C. Offenhauser
PAULA C. OFFENHAUSER
Special Assistant United States Attorney
E-mail:  Paula.Offenhauser@usdog.gov