**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

———————————————————————

|  |  |  |
|---|---|---|
| ALFRED BOURGEOIS, | : | CIVIL ACTION |
|  | : | (Capital Habeas Corpus) |
| Petitioner, | : |  |
|  | : | Case No. 2:19–cv–00392–JMS–DLP |
| V. | : |  |
|  | : | **CAPITAL CASE** |
| SUPERINTENDENT, USP–Terre Haute, | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondents. | : |  |

———————————————————————

———————————————————————————

**PETITIONER'S CONSOLIDATED BRIEF IN OPPOSITION TO RESPONDENTS'
MOTIONS FOR RECONSIDERATION AND LEAVE TO FILE A SURREPLY**

———————————————————————————

Victor J. Abreu
Katherine Thompson
Peter Williams
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West—The Curtis Center
Philadelphia, PA 19106
215–928–0520
Victor_Abreu@fd.org
Katherine_Thompson@fd.org
Pete_Williams@fd.org

Counsel for Petitioner

Dated: April 27, 2020

## **INTRODUCTION**

On March 10, 2020, this Court issued an Order staying the execution of Petitioner Alfred Bourgeois ("Order"), Filing No. 18, pending the resolution of his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, Filing No. 1. The Court found that Petitioner demonstrated a likelihood of success on his claim that the Federal Death Penalty Act ("FDPA") prohibits the execution of his death sentence because he is intellectually disabled ("ID") under current diagnostic standards. Order at 2. Because Mr. Bourgeois satisfied the standard for a stay based on his FDPA challenge to the execution of his sentence, the Court did not address the merits of Petitioner's challenges under the Eighth Amendment. *See* Order at 2. The Court further found that "the equitable factors all favor granting a stay." *Id.*

On March 22, 2020—more than four months after Petitioner filed his Reply in Support of Petition for Habeas Corpus, Filing No. 11, and twelve days after this Court's Order—the Government filed a Motion for Leave to File a Surreply challenging the cognizability of Petitioner's FDPA claim, Filing No. 20, and a proposed Surreply, Filing No. 21. Simultaneously, the Government filed a Motion to Reconsider Order Staying Execution for the reasons stated in its Motion for Leave and Surreply. Filing No. 22.

Respondents' belated attempt to respond to a legal theory that was squarely presented in Mr. Bourgeois's Petition should be rejected. As this Court correctly observed, prior to its Order, the Government's pleadings failed "to even mention Mr. Bourgeois's FDPA claim, let alone explain why it cannot be brought in a § 2241." Order at 5. Because Respondents' newly-submitted brief warrants no consideration, there is no basis for the Court to reconsider its Order.

Yet even if the Court were to consider the Government's untimely and unjustified Surreply, it should deny the Motion to Reconsider, as the Government fails to demonstrate any error in the Court's Order. The Government's belated filing still does not undermine the Court's

1

reliance on the plain language of the FDPA, which provides that "A sentence of death shall not be *carried out* upon a person who *is* mentally retarded." 18 U.S.C. § 3596(c) (emphases added). The Government does not even contest Petitioner's status as intellectually disabled under current diagnostic standards—other than by arguing that those standards did not exist until after Mr. Bourgeois was over the age of eighteen—and it does not challenge the Court's finding that Petitioner "has made a strong showing that he is intellectually disabled" Order at 2, 6–9. Neither does the motion for reconsideration address the other factors governing a stay. It ignores the Court's observations that Petitioner's strong interest in avoiding an illegal execution outweighs the Government's diminished interest in a prompt execution after years of its own delay, that the public shares Petitioner's interest in avoiding a counter-statutory execution, and that Petitioner has brought his claims without unreasonable delay. *Id.* at 10–12. The Court should adhere to its sound ruling and proceed with the orderly adjudication of Petitioner's claims.

## ARGUMENT

I.     THE COURT SHOULD DENY RESPONDENTS' MOTIONS BECAUSE THE GOVERNMENT WAIVED ITS CHALLENGE TO PETITIONER'S FDPA CLAIM.

It is well-established that "[f]ailure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *accord*, *e.g.*, *Owens v. Downey*, 150 F. Supp. 3d 1008, 1025 (S.D. Ind. 2015) ("By failing to respond [to portions of a motion to dismiss], Mr. Owens is deemed to have waived the arguments on these issues and the Court dismisses Mr. Owens' state law claims against the Morgan County Defendants."); *Murray v. Golden Rule Ins. Co.*, 23 F. Supp. 3d 938, 955 (S.D. Ind. 2014) (same, on summary judgment). In this case, Mr. Bourgeois argued that he is entitled to post-conviction relief and a stay of execution because the FDPA expressly and prospectively forbids the execution of an intellectually disabled prisoner, and the claim may be brought under § 2241. *See* 18 U.S.C. §

2

3596(c); Filing No. 1 at 7, 14, 76; Filing No. 3 at 9; Filing No. 11 at 46–47. The Government did not respond to the FDPA claim in any sense, let alone by contesting whether it  is cognizable under § 2241 *See* Filing No. 10. The Court's ruling is therefore correct: "Respondent's failure to address Mr. Bourgeois's FDPA claim is both inexplicable and inexcusable," and the issue is waived. Order at 5–6.

The Government faces a high burden on each of its pending motions, which seek to undo the waiver by filing a surreply and by seeking reconsideration. Even when timely, surreply briefs are "discouraged in most districts," *Ennin v. CNH Industrial America, LLC*, 878 F.3d 590, 595 (7th Cir. 2017), and "should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief," *Meraz-Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011). This Court's Local Rules allow a surreply as of right only in opposition to summary judgment motions, and only "if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." S.D. Ind. L.R. 56–1(d). Furthermore, even where permitted as of right, the surreply "must be filed within 7 days after the movant serves the reply." *Id.* None of these conditions applies in this case.

Here, there can be no doubt that the Government was apprised of Petitioner's FDPA challenge well before this Court issued its Order. Respondents attempt to suggest otherwise, alleging "Bourgeois did not substantively develop an independent FDPA claim." Filing No. 20 at 6. In fact, Petitioner's earlier filings argued: (a) that the plain language of the FDPA expressly prohibits the *execution* of an intellectually disabled prisoner whether or not the prisoner's death sentence was legal when imposed; (b) that the legislative history confirms that Congress intended to allow for challenges to be brought under the FPDA at any time; (c) that the legality of Petitioner's execution is governed by whether he qualifies as intellectually disabled under

3

current legal and diagnostic standards, which § 2255 is ineffective to assess because Petitioner was denied authorization to file a second petition at Respondent's insistence; and (d) that the Seventh Circuit recognizes challenges to the execution of a prisoner's sentence to be cognizable under § 2241. *See* Filing No. 1 at 3, 10, 46, 71–73; Filing No. 11 at 5, 40–41, 42–43. These arguments were not subtle; indeed, Petitioner offered his FDPA challenge as an entirely separate basis for relief under § 2241. But the Government "wholly failed to address Mr. Bourgeois's FDPA claim." Order at 2. Its attempt to do so now through a Surreply filed *after* this Court issued its Order is a day late and several dollars short.

Nor can the Government remedy its prior waiver through a motion for reconsideration. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource v. Walker-Davis Publications*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted). They are not "an opportunity for a party to correct its own procedural failures." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 439 (7th Cir. 1999). Respondents cite the Seventh Circuit's opinion in *Publishers Resource* to support reconsideration, but that same opinion explains why the Government's motion is improper: a motion to reconsider cannot "serve as the occasion to tender new legal theories for the first time." 762 F.2d at 561. This Court's precedents are to the same effect. A party seeking reconsideration cannot "proffer a new legal theory" when that theory "could, with due diligence, have been discovered and offered during the initial consideration of the issue." *In re August 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994); *accord Davis v. Carmel Clay Schools*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (improper to "tender new legal theories").

The Government suggests that questions of law are unwaivable, and that the Court has a

4

never-ceasing duty to ascertain "the proper interpretation of the law" even when the issue is not jurisdictional. Filing No. 20 at 10–12; Filing No. 22 at 2. But the Court has already ruled otherwise, and rightly so. Citing *Chazen v. Marske*, 938 F.3d 851, 863 (7th Cir. 2019), the Court relied on the Seventh Circuit's conclusion that "the United States can concede an underlying legal issue that would allow a claim to proceed in a § 2241 without the Court having to decide the legal issue." Order at 6. By arguing that parties simply "cannot waive the law," Filing No. 20 at 10, Respondent fundamentally misapprehends the adversarial system. "Motion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail." *Dugdale, Inc. v. Alcatel-Lucent USA*, No. 1:09–cv–0960–JMS–TAB, 2011 WL 2728057, at *1 (S.D. Ind. Jul. 12, 2011) (quotation omitted).

Neither did the Government preserve the FDPA issue by arguing more generally that Petitioner cannot obtain § 2241 relief. *See* Filing No. 20 at 10. Venturing considerably beyond a "new argument to support what has been its consistent claim," *id.*, the Government now targets an entirely separate basis for post-conviction relief that it previously ignored. To be sure, the Government urged that Mr. Bourgeois's "petition" be denied as abusive, successive, and barred by *Teague v. Lane*, 489 U.S. 288 (1989). Filing No. 10 at 40–47; Filing No. 20 at 5–6. But, as the Court observed, no binding authority governs whether § 2241 lies for a claim that the prisoner is intellectually disabled and cannot be executed under the FDPA, 18 U.S.C. § 3596(c). Order at 6. Respondent ignored that issue at its peril. A motion for reconsideration may be proper when a court has misunderstood a litigant's argument, but not when the litigant fails to bring the proper argument in the first place. The Government, then, "was not a misunderstood litigant," but "merely an irresolute litigant that was uncertain what legal theory it should pursue." *United States ex rel. Sustainable Modular Mgmt.*, No. 1:16–cv–02915–JMS–MJD, 2017 WL 4405050,

5

at *3 (S.D. Ind. Oct. 4, 2017) (quotation omitted). Its motions for leave and reconsideration should be denied.

## II.   THE GOVERNMENT'S MOTION TO RECONSIDER SHOULD BE DENIED EVEN IF ITS UNTIMELY CHALLENGE TO PETITIONER'S FDPA CLAIM WERE TO BE CONSIDERED.

Even if this Court were to consider the arguments contained in the Government's proposed Surreply, reconsideration should be denied. As stated above, a successful motion for reconsideration must demonstrate "manifest error," which is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Respondents point to no legal authority, let alone controlling precedent, that contradicts the Court's holdings. In fact, the Government's new arguments do not demonstrate *any* error—manifest or otherwise—in the Court's Order. Despite filing an eighteen-page Surreply dedicated to challenging Mr. Bourgeois's FDPA claim, the Government still has not meaningfully challenged Petitioner's view that the FDPA entitles an ID person to prove he is categorically ineligible for death at the time of his execution, that such a claim is cognizable under § 2241, or that Mr. Bourgeois is intellectually disabled under current diagnostic standards.

The Government's proposed Surreply quotes from 18 U.S.C. § 3596(b) and (c), but it fails to engage with the fact that Congress forbade the execution of an intellectually disabled prisoner within the same provision that forbade the execution of a pregnant or mentally incompetent prisoner:

> (b) **Pregnant woman** – A sentence of death shall not be carried out upon a woman while she is pregnant.

> (c) **Mental capacity** – A sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person.

18 U.S.C. §§ 3596(b)–(c).

All three prohibitions—pregnancy, mental incompetence, and intellectual disability—are forward-looking and assess the prisoner's status at the time of execution, rather than at the time of sentencing. The FDPA constrains the execution of any such sentences, whether or not they were validly imposed, and even if the prisoner at the time of trial was non-pregnant, mentally competent, and non-disabled under the standards prevailing at trial. All three categories of claims fall outside the reach of § 2255, which lies when "the sentence *was imposed* in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a) (emphasis added). Legal challenges "concerning the execution but not the validity of the conviction and sentence . . . may not be brought under § 2255 and therefore fall[] into the domain of § 2241." *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

There is no reason to differentiate mental disability from the other two Congressionally-created exemptions to execution. "One of the more reliable canons of statutory construction—the normal practice—is that a term or phrase is ordinarily given the same meaning throughout a statute." *State Farm Mut. Auto Ins. Co. v. C.I.R.*, 698 F.3d 357, 370 (7th Cir. 2012). If a pregnant or mentally incompetent prisoner who faces imminent execution may seek relief under § 2241, then so may a prisoner who is intellectually disabled under current legal and diagnostic standards. It is no surprise that the legislative history supports the idea that a claim such as Petitioner's can be brought "at any time" between judgment and execution. *See* 136 Cong. Rec. S6873–03, S6876, 1990 WL 69446, 101st Cong., 2d Sess. (May 24, 1990) (comments by Sen. Hatch). Mr. Bourgeois argued as much in his Petition, *see* Filing No. 1 at 72, and the Government *still* fails to answer.

Instead of addressing the plain text and history of the FPDA, or otherwise attempting to dispute that an ID person is entitled to prove he is categorically ineligible for death at the time of

his execution, the Government limits its Surreply to challenging Mr. Bourgeois's ability to bring his FDPA claim under § 2241. None of the Government's arguments is persuasive.

First, the Government argues that "because the case law provides that the onset of intellectual disability must occur before the age of eighteen, Bourgeois is today in the same condition with regard to intellectual disability as he was at the time of both the imposition of his sentence and the denial of his § 2255 motion." Filing No. 21 at 2–3. Hence, the Government continues, Petitioner's claim is "not that his sentence cannot be executed; it is that it was unlawful at the time it was imposed and at the time he filed his § 2255 motion." *Id.* at 8. This argument fails for several reasons.

As an initial matter, the Government cites to no authority for the proposition that a petitioner cannot challenge—as Mr. Bourgeois does in these § 2241 proceedings—*both* the imposition *and* the execution of an unlawful sentence. Furthermore, the Government fundamentally mischaracterizes Mr. Bourgeois's claim. The Government is correct that Mr. Bourgeois "is today in the same condition with regard to his intellectual disability" insofar as Mr. Bourgeois has met the medical community's criteria for ID since before he reached the age of eighteen—a fact that the Government has not meaningfully challenged in any of its pleadings before this Court. But the Government is wrong when it states that Mr. Bourgeois's FDPA challenge to the execution of his death sentence is the "exact same" claim he raised in his initial § 2255 motion. *Id.* at 6. The language of the FDPA—which states that an execution "shall not be carried out" against a person who "is" ID—calls for an inquiry governed by present-day diagnostic standards. And, as explained at length in Mr. Bourgeois's Petition and Reply, the district court that ruled on his § 2255 motion failed even to apply the diagnostic standards applicable at the time of its 2011 decision, let alone present-day diagnostic standards. Mr.

8

Bourgeois's impairments have not changed—as he has been intellectually disabled since long before the age of eighteen—but the legal and diagnostic standards used to analyze those impairments have.

The final problem with the Government's first argument against the cognizability of Petitioner's claim is that it defies the language of and intent behind the FDPA, as well as Supreme Court and Seventh Circuit jurisprudence upholding the categorical prohibition against executing the intellectually disabled. As Petitioner argued in his Reply, the Government's position would necessarily exclude challenges from petitioners—like Mr. Bourgeois—who were determined not to be ID under the legal standards prevailing at the time of § 2255 proceedings, but are ID under current legal and diagnostic standards. If it were to be accepted, the Government's position would create the precise situation that both the Supreme Court and the Seventh Circuit have sought to avoid: an unacceptable risk that an intellectually disabled person will be executed. *See Moore v. Texas*, 137 S. Ct. 1039 (2017) (*Moore–I*); *Hall v. Florida*, 572 U.S. 701 (2014); *Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015).[1] The Government has consistently failed to confront this fundamental flaw in its argument, and it fails to do so again in its Surreply.

The Government's second challenge to the cognizability of Petitioner's FDPA claim attempts to distinguish his case from those in which the court upheld a prisoner's ability to use §

---

[1] Meanwhile, as Mr. Bourgeois explained in his Petition, similarly-situated capital prisoners who never even raised an *Atkins* challenge in their initial habeas proceedings because the claim would have been unviable under then-existing legal and diagnostic standards are being given the opportunity to raise such claims in successive habeas petitions in the wake of *Moore–I. See* Filing No. 1 at 7–8, 68–71 (citing cited to *Cathey v. Davis (In re Cathey)*, 857 F.3d 221, 232 (5th Cir. 2017); *In re Johnson*, No. 19–20552, 19–70013, 2019 WL 3814384, at *5–6 (5th Cir. Aug. 14, 2019). The only difference between these prisoners and Mr. Bourgeois is that, because Mr. Bourgeois was *more diligent*, he is precluded from bringing a successive petition under the §2255(h) relitigation bar. *Id.*

2241 to challenge to the execution, as opposed to the imposition, of his sentence. According to the Government, challenges to the *execution* of a sentence may only proceed under § 2241 if the prisoner has never challenged the *imposition* of that sentence. Filing No. 21 at 10. Again, the Government cites to no authority to support this proposition. Instead, the Government returns to its argument that because Mr. Bourgeois litigated an ID claim in his § 2255 proceedings, § 2255 is by definition not "inadequate or unavailable" within the meaning of the § 2255(e) Savings Clause. But again, this argument ignores that Mr. Bourgeois's FDPA challenge to the execution of his sentence relies on legal and diagnostic criteria which were not available at the time of his initial § 2255 proceedings, and which cannot be raised in a successive § 2255 petition. *See* Filing No. 1 at 45-71; Filing No. 11 at 27-36; *see also* Filing No. 10 at 17–18, 74–78 (Government insisting in its Response that *Moore–I* does not apply retroactively and that Petitioner cannot seek relief in the form of a successive § 2255 motion). Mr. Bourgeois is therefore no more able to raise a challenge to the execution of his sentence under § 2255 than were the petitioners in the cases cited by Respondents as appropriate challenges under § 2241. *See* Filing No. 21 at 10 (citing *Coady v. Vaughn*, 251 F.3d 480 (3rd Cir. 2001), and *Lewis v. United States Parole Comm'n*, 132 F. App'x 659 (7th Cir. 2005)).

The Government also argues that Mr. Bourgeois brings the "same claim" now that he brought on his initial § 2255 proceedings, and that his FDPA claim is an abuse of the writ. *See* Filing No. 20 at 17 ("Bourgeois's *Atkins* and FDPA claim is the *same claim* that he previously litigated under § 2255, and even apart from the AEDPA procedural requirements, Bourgeois cannot repeatedly *relitigate the same claim*."). The Government made the same argument as against Mr. Bourgeois's *Atkins* claim, but no more persuasively than now. *See* Filing No. 10 at 7, 72. As Mr. Bourgeois explained in his earlier Reply, the very decision cited by the Government

10

in support of this argument—*Roundtree v. Krueger*, 910 F.3d 312 (7th Cir. 2018)—holds that the abuse of the writ doctrine does not apply if petitioner relies on a change in the law that occurred after his initial § 2255 proceedings. *See* Filing No. 11 at 36–37. Here, Petitioner's FDPA challenge relies on *Moore–I* and *Moore v. Texas*, 139 S. Ct. 666 (2019) (*Moore–II*), both of which post-date his initial § 2255 proceedings, invalidate the Fifth Circuit jurisprudence that rendered his FDPA claim unavailable in § 2255, and mandate the use of current diagnostic standards. *See* Filing No. 11 at 36–37. The Government's claim that the § 2255 proceedings were litigated under the same criteria, *see* Filing No. 21 at 18, is similarly wrong, as the § 2255 court did not and could not apply current diagnostic standards and failed to apply the diagnostic criteria applicable at that time. *See* Filing No. 11 at 11–36.

Finally, the Government's argument that *Moore–I* and *–II* do not aid Mr. Bourgeois in an abuse of the writ analysis because the Supreme Court has not declared them retroactive, *see* Filing No. 21 at 18, is incorrect. As noted above, the abuse of the writ doctrine only requires an "intervening change in the law" in order for a previously raised claim to be relitigated—even if Respondents were somehow correct in arguing that Petitioner's claim of intellectual disability under current diagnostic standards is a relitigation of his § 2255 claim that was rejected under non-diagnostic judge-made standards. *Roundtree*, 910 F.3d at 314. The pre-AEDPA abuse of the writ doctrine that Respondents invoke does not limit actionable changes in the law to those deemed retroactive by the Supreme Court. *Id.*; *see also* Filing No. 11 at 36–37.

Thus, the Government's abuse-of-the-writ argument was unconvincing when raised in its Response, and it remains unconvincing now. For that matter, the Court has already rejected Respondents' argument that Petitioner now brings the "exact" claim on § 2241 that he earlier brought in the Southern District of Texas. In granting a stay of execution, the Court recognized

11

the fact that Petitioner's FDPA claim will be governed by different standards from his earlier claim. *See* Order at 8 n.5. That is why "the Southern District of Texas's analysis is irrelevant when assessing the merit of Mr. Bourgeois's FDPA claim, as this Court decides the claim anew without any deference to the Southern District of Texas's decision." *Id.* Respondent does not even seek to demonstrate error by the Court, let alone manifest error.

The Government's final challenge to the cognizability of Petitioner's FDPA claim—which was also unsuccessfully raised in the same form in the Government's Response—alleges that Mr. Bourgeois cannot satisfy the Savings Clause because he does not fit within the facts of *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), or *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015). As Petitioner thoroughly demonstrated in his Reply, the Seventh Circuit has never held, or even suggested, that these two cases represent the only circumstances under which the Savings Clause is available. *See* Filing No. 11 at 1, 7–9. Mr. Bourgeois need only show that § 2255 is "inadequate or ineffective" to challenge his conviction or sentence, which he has done through the arguments put forth in his Petition and Reply. *See id.* at 6–11; Filing No. 1 at 9–10, 45–48, 68–71. Because the Government's attempts to demonstrate otherwise are ineffective, its Motion to Reconsider should be denied.

**CONCLUSION**

For the reasons above and in his Petition and Reply, Mr. Bourgeois requests that the

Court: A) deny Respondent's Motion for Leave to File Surreply; and B) deny Respondent's

Motion to Reconsider Order Staying Execution of Mr. Bourgeois.


Respectfully submitted,


/s/ Peter Williams
Peter Williams
Victor J. Abreu
Katherine Thompson
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West—The Curtis Center
Philadelphia, PA 19106
215–928–0520
Victor_Abreu@fd.org
Katherine_Thompson@fd.org
Pete_Williams@fd.org


Counsel for Petitioner


Dated: April 27, 2020

13

**CERTIFICATE OF SERVICE**

I, Peter Williams, hereby certify that on this 27th day of April, 2020, a copy of the

forgoing was served via ECF filing on the following people:

Paula C. Offenhauser
Special Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002

Brian Reitz
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market St., Suite 2100
Indianapolis, Indiana 46204-3048

/s/ Peter Williams
Peter Williams